UNITED STATES of America,
Plaintiff-Appellee,

and

Alder Creek Water Users Association,
Plaintiff/Intervenor-Appellee,

v.

ALDER CREEK WATER COMPANY,
aka Alder Creek Water Company, Inc.,
and Gerald I. Bennett aka "Red" Bennett, individually Defendants-Appellants.

No. 85–4203.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1986.

Decided July 29, 1987.

Brian W. O'Brien, Gerald Bennett, Portland, Or., for defendants-appellants.

Dirk D. Snel and Barbara Lither, Seattle, Wash., Edward J. Sullivan, Portland, Or., for plaintiff-appellee.

Before ANDERSON, HUG and CANBY, Circuit Judges.

CANBY, Circuit Judge:

## OVERVIEW

The United States initiated an action for injunctive relief and civil penalties against Alder Creek Water Company (Company) and its president and principal stockholder Gerald Bennett. Through a series of interlocutory orders, the district court placed the defendant Company in an equitable receivership, authorized sale of the Company's assets to the Alder Creek Water Authority (Authority), and terminated the receivership. Final judgment was entered on Aug. 1, 1985. Defendants Bennett and the Company appeal from the final judgment and all previous orders. They seek to set aside the receivership and return the assets of the Company to Bennett. Bennett also contends that the assessment of $6,200 in civil penalties for violations of the Safe Drinking Water Act, imposed in addition to his contempt sentence, violated his constitutional protections against double jeopardy. We dismiss some claims for lack of standing and others as moot. We affirm the remaining claims.

## FACTS

The United States on behalf of the Environmental Protection Agency (EPA) brought an action against the Company and Bennett under the Safe Drinking Water Act, 42 U.S.C. §§ 300f to 300j–10, alleging that the defendants were supplying unsafe and inadequately purified water. A preliminary injunction issued on November 6, 1979, ordering the defendants to take specific steps to bring the water supply into compliance with EPA regulations. Because of repeated violations of the preliminary injunction, contempt orders were issued against the defendants. Bennett was conditionally sentenced to ten days in jail for contempt. Judge Solomon subsequently stayed the order.

At the request of the United States, the district court placed the Company in equitable receivership on Sept. 26, 1980. The receivership order directed Bennett to turn over all Company records and assets to the receiver. The court directed the receiver to evaluate the water system's current condition and to take steps to correct any deficiencies. Gene T. Ginther was appointed as the receiver, a position he held until the district court ordered Ginther relieved as receiver effective Aug. 1, 1982.

Early in 1982, the Alder Creek Water Users Association (Association) intervened in the case. The Association was instrumental in the formation of the Alder Creek Water Authority. The Association was highly critical of Ginther's administration of the receivership. It negotiated with Ginther and, with the concurrence of the United States, presented to the court a proposed order appointing the Authority as substitute receiver and setting the terms for the sale of the Company assets to the Authority. As adopted by the court on July 27, 1982, the order specified that the Authority would deliver to the court $72,000 to purchase the Company assets. A supplemental order on Aug. 25, 1982 authorized payment of Ginther from the sale proceeds upon motion and hearing as to the reasonableness of the requested fees. On Feb. 15, 1983 the court issued an order stating that the Authority had remitted the $72,000 to the court, the title to the assets of the Company had vested in the Authority, the receivership was terminated, and the $72,000 principal plus interest would be distributed after the court resolved the question of receivers' fees. On July 29, 1983, the district court allocated the proceeds from the sale of the Company assets to the Authority as follows: Ginther, who had received $64,245 in connection with the receivership[1] was awarded no additional funds out of the proceeds;[2] Ward Greene, Ginther's attorney, was awarded $6,234.65; the Authority, for its activities as receiver was awarded $15,100; the Authority's attorney was awarded $12,000; and the remaining $38,665.35 was allocated to the Company as its net proceeds from the sale.

Bennett appealed the interlocutory orders of July 27, 1982, Aug. 25, 1982, Feb. 15, 1983 and July 29, 1983 on his own behalf and also appealed the Company's notice of appeal on behalf of the Company. On Feb. 9, 1984, this court dismissed these appeals on the grounds that the Company's notice of appeal was untimely filed and that Bennett lacked standing to challenge the other orders. *United States v. Alder Creek Water Co.*, No. 82–3533 (9th Cir. Feb. 9, 1984) (*Alder Creek I*) [730 F.2d 770 (Table)].

The United States brought a motion for summary judgment against Bennett and the Company for violations of the Safe Drinking Water Act. Partial summary judgment was entered against the defendants for 1,064 violations of seven regulations issued pursuant to the Act. Defendants were found in willful violation and were assessed $6,200 in civil penalties. On

---

**1.** Ginther's engineering firm had negotiated three contracts with the EPA in connection with the receivership. Payment of $29,850 to the firm represented payments for the work performed under these contracts. In addition, Ginther had taken $34,395 from the Company checking account.

**2.** Ginther had presented the court with a bill for unpaid outstanding fees in the amount of $154,283.20.

June 21, 1984, the court ordered that the unsatisfied penalties be paid from the net sale proceeds of the Company, still held by the district court in the absence of any request to release them. On Aug. 5, 1985, the district court dismissed any remaining claims and entered final judgment.

On appeal the defendants challenge the appointment of a receiver, sale of the Company's assets, and disbursement of the funds received from the sale. In addition, Bennett appeals his civil penalties as violative of his constitutional right against double jeopardy.

### Standing

Bennett previously appealed four interlocutory orders that are at issue in the instant appeal. *United States v. Alder Creek Water Co.*, No. 82-3533 (9th Cir. Feb. 9, 1984) (*Alder Creek I*). The law of the case "should be followed unless there is ... new controlling authority, or the prior decision was clearly erroneous and would result in injustice." *Handi Investment Co. v. Mobil Oil Corp.*, 653 F.2d 391, 392 (9th Cir.1981) (citing *Kimball v. Callahan*, 590 F.2d 768, 771–72 (9th Cir.), *cert. denied* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979)). In *Alder Creek I*, we held that Bennett lacked standing to seek redress for the corporation's injuries. *Id.*, slip op. at 3. We adhere to that ruling.

### Mootness

■ The next question is whether the Company's challenges to the validity of the receivership, sale of the assets, and disbursement of funds are moot. A case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries. *See e.g., DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974); *N.A.A.C.P., Western Region v. City of Richmond*, 743 F.2d 1346, 1352–53 (9th Cir. 1984). Although an interlocutory order may be appealable at the time of final judgment, failure to obtain a stay pending appeal may permit the occurrence of "such a comprehensive change in circumstances as to render it inequitable for this court to consider the merits of the appeal." *Algeran, Inc. v. Advance Ross Corp.*, 759 F.2d 1421, 1423 (9th Cir.1985) (quoting *In re Roberts Farms, Inc.*, 652 F.2d 793, 798 (9th Cir.1981)). Appellants neither sought nor obtained stays of the district court's interlocutory orders in this case.

Numerous changes have occurred since the Authority took control of the water system. The Authority hired a consulting company to assist in the management of the Company and produce compliance with state and federal water laws. General obligation bonds were sold to finance acquisition of the assets of the Company. The assets were then sold, and most of the proceeds have been distributed. The Authority negotiated a compliance agreement between the EPA and the water users. Testing was done regularly to ensure the absence of contamination. Plans were formed for financing and implementing long-term improvements. Water users donated time and money. The Authority was able to effect compliance with the Safe Drinking Water Act within four months. There is no reasonable way to undo the sales transaction and its many consequences at this time. These equitable considerations prevent us from examining the defendants' challenges to the validity of the receivership, sale of the assets, or subsequent disbursement of funds.

### Double Jeopardy Claim

■ The sole remaining issue on appeal is whether Bennett's constitutional rights were violated when he was fined for willful failure to comply with the Safe Drinking Water Act. Bennett suggests that he was twice placed in jeopardy: first, when Judge Solomon entered judgment against him for contempt of court and, second, when Magistrate Juba imposed $6,200 in civil penalties against him for more than one thousand violations of the Safe Drinking Water Act. We find no merit to Bennett's claim.

"[P]unishments for contempt of court and a conviction under indictment for the same acts are not within the protection of the constitutional prohibition against double jeopardy." *United States v. Lingo*, 740

F.2d 667, 668 (8th Cir.1984) (citations omitted). Furthermore, Bennett was charged with and found responsible for civil rather than criminal violations of the Act. The actions of the district court in these proceedings did not subject Bennett to double jeopardy.

AFFIRMED.