**STATE OF NEVADA; Richard H. Bryan, Governor of Nevada; Paul Laxalt, United States Senator; Chic Hecht, United States Senator; Barbara Vucanovich, United States Representative in Congress; Harry Reid, United States Representative in Congress, Petitioners,**

v.

**James D. WATKINS, Secretary of the United States Department of Energy,\* Respondent,**

**Arkansas Power & Light Company, et al., Respondent–Intervenor.**

No. 86–7309.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 1991.

Decided Aug. 28, 1991.

---

\* James D. Watkins, Secretary of the United States Department of Energy, has been substituted for former Secretary John Herrington pursuant to Fed.R.App.P. 43(c)(1).

James H. Davenport, Deputy Atty. Gen., Olympia, Wash., for petitioners.

John A. Bryson, Dept. of Justice, Washington, D.C., for respondent.

Jay E. Silberg, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for respondent-intervenor.

Before GOODWIN, FLETCHER and THOMPSON, Circuit Judges.

FLETCHER, Circuit Judge:

The State of Nevada petitions for review of an environmental assessment ("EA") prepared by the Secretary of the Department of Energy ("Secretary") pursuant to the Nuclear Waste Policy Act of 1982 ("NWPA"), Pub.L. No. 97–425, 96 Stat. 2201 (codified as amended at 42 U.S.C. §§ 10101–10270 (1988)). The NWPA provides for the location and development of a site for a permanent repository to house spent nuclear fuel and high-level radioactive waste. As required by the NWPA, the Secretary prepared an EA for each potential site to support his recommendations about which sites to investigate further in a process known as "site characterization." Nevada's petition alleges that the EA prepared for the site at Yucca Mountain, Nevada, is inadequate, and seeks an order requiring the Secretary to correct the inadequacies before proceeding with site characterization at Yucca Mountain. Because Congress amended the NWPA in 1987 to require the Secretary to proceed with site characterization at Yucca Mountain, we dismiss Nevada's petition as moot.

## BACKGROUND

Nevada's petition is the latest in a series of challenges to various aspects of the NWPA and its plan for the siting of a high-level nuclear waste repository.[1] As origi-

---

1. We recently issued our decision in a related case, *Nevada v. Watkins (II)*, 939 F.2d 710 (9th Cir.1991), in which we dismissed for lack of subject matter jurisdiction Nevada's petition for review of the site recommendation guidelines promulgated by the Secretary. Our circuit also

nally conceived and signed into law in January of 1983, the NWPA called on the Secretary to nominate at least five candidate sites suitable for selection as the first repository site and recommend three of the nominated sites to the President for further investigation through the process known as site characterization.[2] 42 U.S.C. §§ 10132(b)(1)(A),(B) (1982). For each of the nominated sites, the Secretary was to prepare an environmental assessment,

> which shall include a detailed statement of the basis for such recommendation and of the probable impacts of the site characterization activities planned for such site, and a discussion of alternative activities relating to site characterization that may be undertaken to avoid such impacts.

*Id.* § 10132(b)(1)(E) (1982); *see also id.* § 10132(b)(1)(E)(i)–(vi) (1982) (specifying items to be addressed in EA). The NWPA also provided for nomination and recommendation of potential sites for a second repository. *Id.* § 10132(b)(1)(C) (1982).

The next step in the original NWPA scheme was for the President to review the Secretary's recommendations and either approve or disapprove the recommended candidate sites. *Id.* § 10132(c) (1982). After performing site characterization at the approved sites pursuant to site characterization plans, *see id.* § 10133 (1982), the Secretary was to decide whether to recommend any of the sites for actual development as a repository, *id.* § 10134(a)(1) (1982). Congress directed the Secretary to submit an environmental impact statement along with any recommendation that a site be developed as a repository. *Id.* § 10134(f)(1) (1982). If the Secretary decided to make such a recommendation, the President then would consider whether the site was qualified and, if so, submit the recommendation to Congress. *Id.* § 10134(a)(2) (1982). The NWPA scheme also provided the state within which the recommended site was located the opportunity to submit to Congress a notice of disapproval. *Id.* § 10136(b) (1982). Congress then would have 90 days during its first period of continuous session to override the state's notice by joint resolution. *Id.* § 10135(c) (1982).

On May 28, 1986, the Secretary nominated five sites and recommended three of them for site characterization: Yucca Mountain, Nevada; Deaf Smith County, Texas; and Hanford, Washington. *Nevada v. Watkins (II)*, 939 F.2d 710, 713 (9th

---

has decided five other cases involving challenges to the Secretary's activities at Yucca Mountain. *See County of Esmeralda v. United States Dep't of Energy*, 925 F.2d 1216 (9th Cir. 1991) (vacating Department of Energy's decision not to designate two Nevada counties as units of local government affected by project at Yucca Mountain); *Nevada v. Burford*, 918 F.2d 854 (9th Cir.1990) (finding that Nevada lacked standing to challenge Bureau of Land Management's grant of right-of-way to Department of Energy for conducting site characterization at Yucca Mountain), *cert. denied sub nom. Nevada v. Jamison*, —— U.S. ——, 111 S.Ct. 2052, 114 L.Ed.2d 458 (1991); *Nevada v. Watkins (I)*, 914 F.2d 1545 (9th Cir.1990) (rejecting various challenges to 1987 NWPA amendments), *cert. denied*, —— U.S. ——, 111 S.Ct. 1105, 113 L.Ed.2d 215 (1991); *Nevada v. Herrington*, 827 F.2d 1394 (9th Cir.1987) (upholding Secretary's decision that states cannot use grant monies from Nuclear Waste Fund to finance their participation in judicial review proceedings); *Nevada ex rel. Loux v. Herrington*, 777 F.2d 529 (9th Cir.1985) (finding that Nevada was entitled to funding of studies it conducted at Yucca Mountain prior to site characterization).

These prior cases contain detailed descriptions of the process for locating and developing sites. *See, e.g., Nevada v. Watkins (I)*, 914 F.2d at 1549–50. For a more elaborate description of the process, see "Background Information," Nuclear Waste Policy Act of 1982; General Guidelines for the Recommendation of Sites for the Nuclear Waste Repositories, 49 Fed.Reg. 47,714–18 (1984).

**2.** Site characterization includes:

(A) siting research activities with respect to a test and evaluation facility at a candidate site; and

(B) activities, whether in the laboratory or in the field, undertaken to establish the geologic condition and the ranges of the parameters of a candidate site relevant to the location of a repository, including borings, surface excavations, excavations of exploratory shafts, limited subsurface lateral excavations and borings, and in situ testing needed to evaluate the suitability of a candidate site for the location of a repository, but not including preliminary borings and geophysical testing needed to assess whether site characterization should be undertaken.

42 U.S.C. § 10101(21) (1988).

Cir.1991). The same day, Nevada filed the present petition, asking the court to invalidate the Secretary's nomination and recommendation of Yucca Mountain on the ground that the Yucca Mountain EA was inadequate. While Nevada's petition was pending, however, Congress legislated a different direction for the site selection process. On December 22, 1987, Congress amended the NWPA to require the Secretary to proceed with site characterization at Yucca Mountain and terminate investigation of all other candidate sites, including the Deaf Smith County and Hanford sites. Nuclear Waste Policy Amendments Act of 1987, Subtitle A of Title V of Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, § 5011, 101 Stat. 1330–1, 1330–228. The NWPA amendments also repealed the Secretary's authority to investigate potential sites for a second repository.[3] *Id.* § 5012, 101 Stat. at 1330–231.

In response to the NWPA amendments, Nevada has reformulated the relief it requests. Nevada now asks us to enjoin site characterization activities at Yucca Mountain until the Secretary promulgates a valid, adequate, and sufficient EA. The Secretary counters that the NWPA amendments have rendered Nevada's petition moot.

## DISCUSSION

■ We have statutory jurisdiction over Nevada's petition in accordance with section 119 of the NWPA, 42 U.S.C. § 10139(a)(1)(E) (1988). However, our assertion of jurisdiction must also comport with the "case or controversy" requirement of Article III of the Constitution. If Congress's amendments to the NWPA have rendered this case moot, we lack Article III jurisdiction. *DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 1705–06, 40 L.Ed.2d 164 (1974); *In re Bunker Ltd. Partnership,* 820 F.2d 308, 310 (9th Cir. 1987). A case is moot if "the issues presented are no longer 'live' or the parties

lack a legally cognizable interest in the outcome." *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (internal quotation omitted). The critical question is whether, in light of the amendments to the NWPA, we could grant "any effective relief" to Nevada if we were to rule in its favor on the merits. *See Garcia v. Lawn,* 805 F.2d 1400, 1402 (9th Cir.1986); *see also United States v. Alder Creek Water Co.,* 823 F.2d 343, 345 (9th Cir.1987) ("A case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries.").

■ The Secretary presents two arguments for why no effective relief is available to Nevada. First, the Secretary contends that the sole legal effect and purpose of the EAs was to inform and support the Secretary's decision on which sites to nominate and recommend for site characterization. Now that Congress has directed the Secretary to proceed with site characterization at Yucca Mountain and nowhere else, site characterization must go forward regardless of any inadequacies of the EA. Second, the Secretary claims that as a practical matter any inadequacies in the Yucca Mountain EA will be resolved by the further investigation that site characterization entails. In preparing the EA, the Secretary was statutorily limited to the use of "available geophysical, geologic, geochemical and hydrologic, and other information." 42 U.S.C. § 10132(b)(3) (1988). The Secretary thus argues that it would not constitute effective relief for the court to require the Secretary to reconsider information that was "available" in the mid-1980s when site characterization will generate more complete and accurate data.

To the extent that Nevada's petition challenges the adequacy of the EA to support the decision to proceed with site characterization at Yucca Mountain, we agree with the Secretary that the petition is moot.

---

3. The amendments did, however, authorize the Nuclear Waste Negotiator, an official appointed by the President with the advice and consent of the Senate, to negotiate with states and Native American tribes over another repository site.

*See* 42 U.S.C. §§ 10242–43 (1988). The amendments also addressed numerous other aspects of the NWPA's nuclear waste disposal plan that are not relevant to the present case.

Congress already has made that decision, by amending the NWPA to require that the Secretary conduct site characterization only at Yucca Mountain and by eliminating the Secretary's authority to consider other potential sites. Indeed, the Secretary is not even required to consider alternative sites in the final environmental impact statement that he must file together with any recommendation he makes to develop a repository at Yucca Mountain. 42 U.S.C. § 10134(f)(3) (1988). Congress has decided to focus the nation's resources on investigating Yucca Mountain as the sole potential site for a high-level nuclear waste repository. *Nevada v. Watkins (I)*, 914 F.2d at 1550. To enjoin the site characterization activities at Yucca Mountain would be to second-guess that legislative decision.[4]

We also agree with the Secretary that we cannot provide effective relief by ordering the Secretary to revisit the EA to correct any inadequacies or deficiencies that effectively will be addressed during site characterization. As required by the NWPA, the EA was prepared on the basis of only "available" information, whereas the much more comprehensive investigation of Yucca Mountain's suitability that the Secretary will conduct during site characterization will produce more complete and up-to-date information.[5] It would not constitute effective relief for us to require the Secretary to revise the EA based on stale and incomplete information when site characterization will generate fresher and more complete data.

Nevada concedes that "the central, and admittedly most important, function of the EA" was to provide data that the Secretary could use to compare sites and make recommendations about which sites to characterize. Reply Brief of Petitioner at 1. However, Nevada disputes the Secretary's contention that this is the only purpose for the EA. Nevada claims that the EA has continuing application during site characterization—that it was intended to inform and constrain the Secretary's characterization activities. To support its view that Congress did not intend the 1987 amendments to render a challenge to the EA entirely moot, Nevada points out that Congress did not repeal the provisions relating to EAs, even though it eliminated the Secretary's authority to nominate any new sites or prepare any new environmental assessments.[6] If, as the Secretary argues,

---

**4.** We note that Nevada's officials had, and exercised, the opportunity to present arguments to Congress concerning the EA's inadequacies and the technical problems that Yucca Mountain would present as a site. *See Nuclear Waste Program: Hearings on S. 839 Before the Senate Comm. on Energy and Natural Resources,* 100th Cong., 1st Sess., pt. 1, at 14, 144, 337 (statements of Chic Hecht, Senator from the State of Nevada); *id.,* pt. 3, at 16 (same); *id.,* pt. 3, at 27 (statement of Harry Reid, Senator from the State of Nevada); *id.,* pt. 3, at 35 (statement of Richard Bryan, Governor of the State of Nevada); *id.* at 366 (statement of Barbara Vucanovich, U.S. Representative from the State of Nevada); *id.,* pt. 3, at 370 (statement of James Bilbray, U.S. Representative from the State of Nevada); *id.,* pt. 3, at 378 (statement of Sen. Reid); *id.,* pt. 4, at 7 (statement of Sen. Hecht). We can only assume, therefore, that Congress made a fully informed decision when it enacted the 1987 NWPA amendments. *See South Carolina v. Baker,* 485 U.S. 505, 513, 108 S.Ct. 1355, 1361, 99 L.Ed.2d 592 (1988) (refusing "to second-guess the substantive basis for congressional legislation" where state argued that Congress was uninformed when it enacted legislation).

**5.** Nevada argues that the "available information" limitation does not apply to Yucca Moun-

tain. This argument rests on a misreading of the relevant provision, which states in pertinent part:

> In evaluating the sites nominated under this section prior to any decision to recommend a site as a candidate site, the Secretary shall use available geophysical, geologic, geochemical and hydrologic, and other information and shall not conduct any preliminary borings or excavations at a site *unless (i) such preliminary boring or excavation activities were in progress on January 7, 1983....*

42 U.S.C. § 10132(b)(3) (1988) (emphasis added). Nevada contends that Yucca Mountain falls within the emphasized exception because the Secretary began preliminary borings and excavations there in 1978. This contention fails to recognize that the provision contains two distinct clauses. The first clause limits the Secretary to the use of available information; the second bars the Secretary from conducting preliminary borings and excavations, except where they were already in progress prior to 1983. The exception to the second clause does not apply to the first clause.

**6.** The Nuclear Waste Negotiator is authorized to request that the Secretary prepare an environmental assessment for any site that is the sub-

Congress intended the EAs to pertain only to the nominations and recommendations for site characterization, there was no reason for it to leave the EA provisions on the books after settling on Yucca Mountain.

Nevada's claim is at least tenable. It does not appear that Congress simply neglected to amend all of the EA provisions to conform to the new scheme. To the contrary, Congress deleted one subsection, relettered the remaining subsections, and left intact the list of items to be considered by the EA as well as the provision for judicial review. That Congress tinkered with the EA provisions, rather than deleting them outright, leaves open the possibility that the EA was intended to serve some function or purpose that survives Congress's order to the Secretary to proceed with site characterization at Yucca Mountain.

In order to identify the functions and purposes behind the EA and determine whether or not any of them survives the 1987 amendments, we turn to the NWPA provision that sets out the required elements of an EA. An EA must include:

(i) an evaluation by the Secretary as to whether such site is suitable for site characterization under the guidelines established under subsection (a) of this section; [7]

(ii) an evaluation by the Secretary as to whether such site is suitable for development as a repository under each such guideline that does not require site characterization as a prerequisite for application of such guideline;

(iii) an evaluation by the Secretary of the effects of the site characterization

activities at such site on the public health and safety and the environment;

(iv) a reasonable comparative evaluation by the Secretary of such site with other sites and locations that have been considered;

(v) a description of the decision process by which such site was recommended; and

(vi) an assessment of the regional and local impacts of locating the proposed repository at such site.

42 U.S.C. § 10132(b)(1)(D) (1988). The NWPA limits the scope of our review of the Yucca Mountain EA to its sufficiency "with respect to the items described in clauses (i) through (vi)." [8] *Id.* § 10132(b)(1)(E)(i). As Nevada challenges the EA's sufficiency with respect to the items in all of these clauses, except clause (v), we will examine each clause for evidence of a purpose for the EA that Congress has not effectively rendered moot by its decision that Yucca Mountain should undergo site characterization.

Nevada's challenges regarding clauses (i) and (iv) are clearly moot. Clause (i) pertains to whether a given site is suitable for site characterization, and Congress already has directed that Yucca Mountain be characterized. Even if the EA is inadequate in its evaluation of suitability, site characterization still must proceed under congressional mandate. The same is true for clause (iv). By deciding that the Yucca Mountain site shall undergo site characterization and the other sites shall not, Congress has made comparative evaluation irrelevant to the process. To require the Secretary to provide such a comparative

ject of negotiations between him and a state or Native American tribe. 42 U.S.C. § 10244(a) (1988). However, these environmental assessments are governed not by the provisions at issue in the present case, but by the same section that authorizes them. *See id.* § 10244(b) (1988).

**7.** The guidelines to which this section refers are the site recommendation guidelines promulgated by the Secretary and challenged by Nevada in *Nevada v. Watkins (II)*, 939 F.2d 710 (9th Cir.1991) (dismissing challenge for lack of subject matter jurisdiction).

**8.** Though section 10132(b)(1)(E)(i) refers to "clauses (i) through (vi) of subparagraph (E)," the six clauses actually appear in subparagraph (D), the prior subparagraph. The erroneous reference resulted from the 1987 NWPA amendments, which deleted a prior subparagraph and relettered the remaining subparagraphs, but failed to change the internal reference to conform to the relettering. Thus, old subparagraph (F) became new subparagraph (E), and old subparagraph (E) became new subparagraph (D), but the internal reference to "subparagraph (E)" was not changed to "subparagraph (D)."

evaluation at this stage would be pointless, as it could not change the directive of Congress. Neither clause (i) nor clause (iv) evinces a purpose for the EA that survives the 1987 NWPA amendments.

Nevada's challenge based on clause (ii) is also moot. That clause concerns the suitability of the site under each of the site recommendation guidelines "that does not require site characterization as a prerequisite for application of such guideline." 42 U.S.C. § 10132(b)(1)(D)(ii) (1988). Nevada identifies inadequacies in the EA's treatment of two such issues: land ownership and jurisdiction over the site, and the site's link to transportation routes and proximity to sources of waste. As is apparent from the text of clause (ii) itself, however, there is no nexus between these issues and the relief Nevada is seeking—an injunction against site characterization. Inadequacies in the EA relating to clause (ii) cannot affect whether or how site characterization should be conducted, and site characterization can proceed without prejudicing Nevada's right to challenge Yucca Mountain's suitability with respect to these issues if and when the Secretary actually recommends Yucca Mountain for development as a repository site.[9] Since the relief Nevada seeks cannot redress these alleged inadequacies in the EA, we will not interfere with Congress's clearly expressed direction to the Secretary to proceed with site characterization.

■ Clause (iii) pertains not to the suitability of the site as a repository, but to the effects that site characterization will have on the environment and public health and safety at the site. To the extent that the purpose of clause (iii) was to provide Congress with input to inform its decision on whether and where to authorize site characterization, the NWPA amendments ren-

der this aspect of Nevada's challenge moot. According to Nevada, however, clause (iii) demonstrates that the EA was intended to serve as an enforceable constraint on how site characterization is to be performed. Thus, argues Nevada, the Secretary cannot lawfully proceed with site characterization if the EA is inadequate on this score. In support of its argument, Nevada directs our attention to section 113(a) of the NWPA, 42 U.S.C. § 10133(a) (1988). That section reads in full:

The Secretary shall carry out, in accordance with the provisions of this section, appropriate site characterization activities at the Yucca Mountain site. The Secretary shall consider fully the comments received under subsection (b)(2) of this section and section 10132(b)(2) of this title and shall, to the maximum extent practicable and in consultation with the Governor of the State of Nevada, *conduct site characterization activities in a manner that minimizes any significant adverse environmental impacts identified in such comments or in the environmental assessment submitted under subsection (b)(1) of this section.*

*Id.* (emphasis added). According to Nevada, the emphasized text establishes that Congress intended the EA to constrain site characterization.

We must disagree with Nevada's reading of this provision. The "environmental assessment" to which section 10133(a) refers is one "submitted under subsection (b)(1) of this section," whereas the Yucca Mountain EA was prepared pursuant to subsection (b)(1) of a different section: section 10132. The environmental assessments made under section 10133 are part of the site characterization plan ("SCP") that the Secretary was obligated to prepare under section

9. The site recommendation guidelines, issued pursuant to section 112(a) of the NWPA, 42 U.S.C. § 10132(a) (1988), require the Secretary to address site ownership and jurisdiction issues as well as transportation issues in any recommendation he makes to develop Yucca Mountain as a repository site. *See* 10 C.F.R. §§ 960.5–2–2 & 960.5–2–7 (1991). Thus, if the Secretary makes such a recommendation, Nevada will have the opportunity to challenge the

Secretary's treatment of these issues via judicial review of the Secretary's recommendation and the accompanying environmental impact statement required by the NWPA, 42 U.S.C. § 10134(f) (1988). *See* 42 U.S.C. § 10139(a)(1) (1988) (providing for judicial review of environmental impact statement and any final decision or action of the Secretary); *Nevada v. Watkins (II),* 939 F.2d 710, 713 n. 8 (9th Cir.1991) (noting same).

10133(b).[10] The Secretary published the Yucca Mountain SCP in December of 1988, accompanied by an Environmental Monitoring and Mitigation Plan for Site Characterization ("EMMP"). The EMMP, which describes the site characterization activities to be performed under the SCP and the plans for monitoring and mitigating the environmental impacts of those activities, was prepared specifically "to document compliance with Section 113(a) of the NWPA," 42 U.S.C. § 10133(a). Yucca Mountain Project Office, United States Department of Energy, Environmental Monitoring and Mitigation Plan for Site Characterization, at 1–1 (Revision 2, Dec.1988). The language in section 10133(a) on which Nevada relies requires the Secretary to conduct site characterization in accordance with the Yucca Mountain SCP and EMMP; it does not make the Yucca Mountain EA an enforceable constraint.

Even if we were to agree with Nevada's interpretation of section 10133(a), its challenge under clause (iii) still would be moot. Nothing in the text of section 10133(a) requires that an EA adequately address the concerns in clause (iii) before site characterization can go forward. We are unwilling to infer such a requirement when that inference would conflict with the spirit, if not the letter, of Congress's command that site characterization proceed at Yucca Mountain. Nevada's challenge under clause (iii) is moot.

Finally, Nevada challenges the sufficiency of the EA's assessment of regional and local impacts of siting, as required by clause (vi). This challenge meets the same fate as the others, and for the same reasons. The issues addressed by this clause concern the suitability of a site, and regardless of any inadequacies in the EA's evaluation of suitability with regard to these issues, Congress has ordered that site characterization must proceed. We would con-

travene Congress's clearly expressed intent if we were to enjoin characterization. Moreover, site characterization will develop a much more comprehensive investigation of these aspects of Yucca Mountain's suitability than could a study based solely on information that was "available" as of the mid-1980s. According to the Yucca Mountain EA itself, "[a] detailed analysis of regional and local effects would be performed in conjunction with site characterization and will be reported in the environmental impact statement." 1 Office of Civilian Radioactive Waste Management, United States Department of Energy, Environmental Assessment, Yucca Mountain Site, Nevada Research and Development Area, Nevada, at 5–1 (May 1986). An order enjoining site characterization activities—and thereby preventing the Secretary from accumulating more complete information about the suitability of Yucca Mountain as a repository site—would not constitute effective relief.

## CONCLUSION

In 1987, Congress ordered the Secretary to conduct site characterization at Yucca Mountain. Nothing in the NWPA suggests that this clear legislative command is contingent upon the promulgation of a valid, adequate, and sufficient EA. We hold that Congress's 1987 amendments to the NWPA have rendered moot all aspects of Nevada's challenge to the Yucca Mountain EA. Accordingly, the petition is DISMISSED.

---

**10.** At first glance, the term "environmental assessment" might appear to refer to an EA prepared under section 10132(b)(1), since section 10133(b)(1) does not employ that exact term. However, there is no evidence that Congress erred in its reference to "subsection (b)(1) of this section." Section 10133(b)(1)(A) requires the site characterization plan to include plans

for controlling safety hazards and mitigating adverse environmental impacts, the same concerns identified in clause (iii). Moreover, the second sentence of section 10133(a) demonstrates that Congress knew how to describe a reference to section 10132. Absent evidence that Congress did not mean what it said, we rely on the plain language of section 10133(a).