MOBIL OIL CORPORATION,
et al., Petitioners

v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY, Respondent.

American Iron and Steel Institute,
et al., Intervenors.

And Consolidated Cases.

Nos. 92–1211, 92–1229, 92–1230, 92–1233, 92–1234 and 92–1237.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 7, 1994.

Decided Sept. 23, 1994.

Michael W. Steinberg and Donald J. Patterson (for American Min. Congress), Washington, DC, argued the cause for consolidated petitioners and intervenors. With them on the briefs were Edward M. Green, Roderick T. Dwyer, and Nancy D. Tammi (for American Min. Congress), Karl S. Bourdeau and Barton C. Green (for American Iron and Steel Institute), Ralph J. Colleli, Jr., G. Wil-

liam Frick, and Hunter Prillaman (for American Petroleum Institute), David F. Zoll, Washington, DC, and Ronald A. Shipley, Germantown, MD (for Chemical Mfrs. Ass'n), Douglas H. Green and William R. Weissman (for Edison Elec. Institute), James K. Jackson (for Mobil Oil Corp.), Richard A. Flye (for The Fertilizer Institute), and Paul E. Gutermann and John N. Moore, Washington, DC (for Zinc Corp. of America and Horsehead Resource Development Co.).

Thomas S. Llewellyn (for Mobil Oil Corp.), Gordon D. Quin, Whippany, NJ (for The Fertilizer Institute), John N. Hanson (for American Min. Congress), and Norman L. Rave, Jr., Washington, DC (for Edison Electric Institute), Washington, DC, entered appearances.

Mary Elizabeth Ward and Scott A. Schachter, Attys., U.S. Dept. of Justice, Washington, DC, argued the cause for respondents. With them on the brief was Lois J. Schiffer, Acting Asst. Atty. Gen., Washington, DC. Barry M. Hartman and Caroline H. Wehling, Counsel, U.S. Environmental Protection Agency ("EPA"), and Raymond Ludwiszewski, Acting Gen. Counsel, EPA, Washington, DC, entered appearances for respondent.

Eli D. Eilbott and David R. Case, Washington, DC, were on the brief for intervenor Hazardous Waste Treatment Council.

Before EDWARDS, BUCKLEY, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Petitioners raise numerous challenges to the "mixture" and "derived-from" rules promulgated by the Environmental Protection Agency under authority of Subtitle C of the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. §§ 6901–6992k (1988 & Supp. IV 1992). We do not address these challenges, however, because we conclude that subsequent congressional action has rendered the dispute moot. Petitioners American Mining Congress and The Fertilizer Institute also challenge the so-called "Be-

vill mixture rule," promulgated under the same authority, which we vacate in part.

## I. BACKGROUND

RCRA provides a comprehensive scheme for handling solid wastes. As part of this regime, Subchapter III, 42 U.S.C. §§ 6921–6939b (1988 & Supp. IV 1992) ("Subtitle C"), subjects hazardous wastes to stringent cradle-to-grave regulation. The statute defines "hazardous waste" as

a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may—

(A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or

(B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

42 U.S.C. § 6903(5) (1988). Subtitle C also established a two-step process for the identification of hazardous wastes: The EPA would first promulgate criteria for identifying the "characteristics" of hazardous waste, "taking into account toxicity, persistence, and degradability in nature, potential for accumulation in tissue, and other related factors such as flammability, corrosiveness, and other hazardous characteristics." *Id.* § 6921(a) (1988). Then, on the basis of those criteria, the EPA would "promulgate regulations identifying the characteristics of hazardous waste, and listing particular hazardous wastes (within the meaning of section 6903(5) of this title), which shall be subject to the provisions of [Subtitle C]." *Id.* § 6921(b)(1).

Pursuant to this mandate, the EPA issued proposed rules in 1978. 43 Fed.Reg. 58,946 (1978). In that proposal, the EPA stated that it would identify hazardous wastes on the basis of the following characteristics: ignitability, corrosivity, reactivity and toxicity. 43 Fed.Reg. at 58,950, 58,955–57. Wastes displaying any of these characteristics were to be listed, as were wastes that independently satisfied the statutory definition of

"hazardous waste" contained in 42 U.S.C. § 6903(5). 43 Fed.Reg. at 58,955, col. 2. A listed waste would remain subject to Subtitle C regulation until it was certified to the EPA that the waste was "non-hazardous according to the results of each characteristic or property tested." 43 Fed.Reg. at 58,953, col. 3.

The EPA issued its final rule on May 19, 1980, in which it published a list of some 400 hazardous wastes. 45 Fed.Reg. 33,084, 33,-122–27 (1980). The final rule also promulgated the "mixture" and "derived-from" rules. The mixture rule provided that a solid waste would be treated as hazardous if "[i]t is a mixture of solid waste and one or more [listed] hazardous wastes...." *Id.* at 33,119, col. 3. The derived-from rule provided that

> [a]ny solid waste generated from the treatment, storage, or disposal of a hazardous waste, including any sludge, spill residue, ash, emission control dust or leachate (but not including precipitation run-off) is a hazardous waste.

45 Fed.Reg. at 33,120, col. 1. Thus a substance that was mixed with a listed hazardous waste or derived from a hazardous waste was to be regulated as a hazardous waste regardless of whether the mixture or derivative actually "[p]ose[d] a substantial present or potential hazard to human health or the environment...." 42 U.S.C. § 6903(5). Any mixture or derived-from waste, however, could escape Subtitle C regulation through a "delisting" process. *See* 45 Fed.Reg. at 33,-116, col. 3 (waste may be delisted if demonstrated that it is non-hazardous "based on the results of specific tests for each of the hazardous properties for which the waste was listed").

The initial promulgation of the mixture and derived-from rules was challenged on both substantive and procedural grounds. On December 6, 1991, we vacated both rules because the EPA had "entirely failed to comply with [the Administrative Procedure Act's] notice-and-comment requirements...." *Shell Oil Co. v. EPA*, 950 F.2d 741, 752 (D.C.Cir.1991). As we disposed of the case on procedural grounds, we did not determine whether the EPA had exceeded its authority under RCRA in issuing the rules.

On March 3, 1992, the EPA issued an "interim final rule," reinstating the vacated mixture and derived-from rules under authority of the APA's "good cause" exception, 5 U.S.C. § 553(b)(3)(B), which permits the issuance of a rule without notice and prior opportunity for comment on a finding that such are "impractical, unnecessary, or contrary to the public interest." 57 Fed.Reg. 7,628, 7,628–29 (1992). In doing so, the EPA sought to obtain "the time to sort through more fully the implications of alternative regulatory approaches and understand the scope and effect of current Subtitle C rules." 57 Fed.Reg. at 7,630, col. 3. The EPA promised to publish options for modifying or replacing the rules by April 28, 1992; and it included a provision terminating the interim final rules on April 28, 1993 ("sunset provision"). *Id.*

The promised revisions were issued on May 20, 1992. These included a "Hazardous Waste Identification Rule" ("HWIR") that would effect "modifications to the RCRA regulatory framework which will address over-regulatory situations created by the 'mixture' and 'derived-from' rules." 57 Fed.Reg. 21,-450, 21,452, col. 1 (1992). In the HWIR, the EPA conceded that the mixture and derived-from rules were overinclusive, resulting in a regime where "millions of tons of mixtures and derived-from residuals that must be managed as hazardous waste [under Subtitle C] because of their history (*i.e.*, what they were mixed with or derived-from) may actually pose quite low hazards." *Id.* at 21,451, col. 3.

Five months later, on October 6, 1992, Congress adopted an amendment to an EPA appropriations bill that reads as follows:

> EPA shall promulgate revisions to paragraphs (a)(2)(iv) [the mixture rule] and (c)(2)(i) [the derived-from rule] of 40 CFR 261.3, as reissued on March 3, 1992, by October 1, 1994, but any revision to such paragraphs shall not be promulgated or become effective prior to October 1, 1993. Notwithstanding paragraph (e) of 40 CFR 261.3 [the "sunset provision"], as reissued on March 3, 1992, paragraphs (a)(2)(iv) and (c)(2)(i) of such regulations shall not be terminated or withdrawn until revisions are promulgated and become effective in

accordance with the preceding sentence. The deadline of October 1, 1994 shall be enforceable under section 7002 of the Solid Waste Disposal Act.

Pub.L. No. 102–389, 106 Stat. 1571, 1602 (Oct. 6, 1992) ("Chafee Amendment"). The EPA contends that this amendment codifies the mixture and derived-from rules, mooting petitioners' challenges thereto.

Three weeks later, the EPA issued notices announcing its withdrawal of the HWIR proposal and rescission of the sunset provision. 57 Fed.Reg. 49,280, 49,280, col. 1 (1992) (withdrawing HWIR proposal); 57 Fed.Reg. 49,278, 49,278, col. 1 (withdrawing the sunset provision). In both notices, the EPA announced its intent to promulgate revisions to the mixture and derived-from rules within 12 to 24 months. 57 Fed.Reg. at 49,278, col. 2; 57 Fed.Reg. at 49,280, col. 3.

We are also asked to review the EPA's treatment of wastes consisting of a mixture of a "Bevill waste" and one or more hazardous wastes. Bevill wastes are derived from the extraction, beneficiation, and processing of ores and minerals and are exempted from Subtitle C regulation by virtue of the Bevill Amendment to RCRA, 42 U.S.C. § 6921(b)(3)(A)(ii) (1988). *See generally Horsehead Resource Dev. Co. v. Browner*, 16 F.3d 1246 (D.C.Cir.1994). In 1989, the EPA promulgated regulations determining which mineral processing wastes qualified as Bevill wastes. At the same time, the agency issued what petitioners refer to as the "Bevill mixture rule." The "Bevill mixture rule" had two distinct provisions that are relevant here. One provision described how mixtures of Bevill wastes and characteristic wastes were to be treated, while the other declared that mixtures of Bevill wastes and listed wastes were governed by the Subtitle C mixture rule. 54 Fed.Reg. 36,592, 36,622–23, 36,641 (1989). The Bevill mixture rule was contested in *Solite Corp. v. EPA*, 952 F.2d 473 (D.C.Cir.1991), where we concluded that, because the EPA had assumed the validity of the Subtitle C mixture rule in "extending [it] to the Bevill context," our decision in *Shell Oil* vacating and remanding the Subtitle C mixture rule required us to vacate and remand the Bevill mixture rule as well. *Id.* at

493–94. In the interim final rule, the EPA repromulgated the characteristic waste provision of the Bevill mixture rule as well as the Subtitle C mixture and derived-from rules. 57 Fed.Reg. 7,628–32. Petitioners American Mining Congress and The Fertilizer Institute ("Bevill petitioners") challenge that action.

## II. DISCUSSION

The EPA's regulations are to be upheld so long as they are not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1988). Therefore, if an agency has acted within its authority and presents a rational basis for its actions, we must affirm. *See KCST–TV, Inc. v. FCC*, 699 F.2d 1185, 1191 (D.C.Cir.1983). Before investigating whether the EPA has met those standards, we must consider its mootness argument.

### A. Challenge to the Subtitle C Mixture and Derived-from Rules

█ A "court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it." *California v. San Pablo & Tulare R.R. Co.*, 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893). In enacting the Chafee Amendment, Congress mandated that "paragraphs (a)(2)(iv) [the mixture rule] and (c)(2)(i) [the derived-from rule] shall not be terminated or withdrawn until revisions are promulgated and become effective." Pub.L. No. 102–389, 106 Stat. at 1603. Thus, we must examine whether Congress has rendered the case moot by precluding us from granting petitioners the relief they seek—an order vacating the interim rules.

Petitioners argue that we may disregard the Chafee Amendment because it speaks only to the agency, not to the courts. The relevant language of the statute reads:

EPA shall promulgate revisions to [the Subtitle C mixture and derived-from rules] as reissued on March 3, 1992, by October 1, 1994, but any revisions to such paragraphs shall not be promulgated or be-

come effective prior to October 1, 1993. Notwithstanding [the "sunset provision"], as reissued on March 3, 1992, [the mixture and derived-from rules] *shall not be terminated or withdrawn* until revisions are promulgated and become effective in accordance with the preceding sentence.

106 Stat. at 1602–03 (emphasis added). The key phrase is "terminated or withdrawn." Petitioners contend that courts do not "terminate" or "withdraw" regulations, they only "review" and "vacate" them. Under this interpretation, the "terminated or withdrawn" phrase speaks only to the agency; and its sole effect is to override the sunset provision and require the EPA to promulgate revisions to the Subtitle C mixture and derived-from rules by October 1, 1994.

We believe that the Chafee Amendment does more than that. We read its language as binding us as well as the agency. By precluding termination of the regulations, Congress expressed a firm intent that the two rules remain in effect until October 1, 1994, when they will be replaced by new rules that the EPA is to issue by that date. That purpose would be frustrated if courts remained free to vacate the interim final rule before the new rules came into effect, thereby creating the regulatory gap the Chafee Amendment was enacted to prevent. *Cf. Robertson v. Seattle Audubon Soc'y,* —— U.S. ——, ——, 112 S.Ct. 1407, 1414, 118 L.Ed.2d 73 (1992) (rejecting argument that Congress in an appropriations act spoke only to the agency: "A statutory directive binds *both* the executive officials who administer the statute *and* the judges who apply it in particular cases") (emphasis in original).

Because we are precluded from offering petitioners the relief they seek, their challenge to these rules is moot. *Nevada v. Watkins,* 943 F.2d 1080, 1083–87 (9th Cir. 1991) (state challenge of Secretary of Energy's decision to examine the possibility of situating a nuclear waste repository at Yucca Mountain mooted by congressional action requiring the Secretary to conduct further investigations only at Yucca Mountain and eliminating his authority to consider other potential sites).

We turn, then, to the Bevill petitioners' challenges.

B. **Challenges to EPA Treatment of Mixtures of Bevill and Hazardous Wastes**

The EPA addressed the problems arising out of the Bevill Amendment in a final rule issued on September 1, 1989. 54 Fed.Reg. at 36,592. It dealt with Bevill/characteristic waste mixtures by revising the definition of hazardous waste in section 261.3 of its regulations. As revised and subsequently reissued, the definition distinguishes between two kinds of Bevill/characteristic waste mixtures. The first deals with a Bevill waste that is mixed with a waste that "exhibits any of the characteristics of hazardous waste." *Id.* § 261.3(a)(2)(i). The resulting mixture will be subject to Subtitle C regulation

if it exhibits a characteristic that would not have been exhibited by the excluded [e.g., Bevill] waste alone if such mixture had not occurred or if it continues to exhibit any of the characteristics exhibited by the non-excluded wastes prior to mixture.

40 C.F.R. § 261.3(a)(2)(i). The second deals with a Bevill waste that is mixed with a listed waste that is listed "solely because it exhibits one or more of the characteristics of hazardous waste." This mixture will be subject to Subtitle C regulation unless "the resultant mixture no longer exhibits any characteristic of hazardous waste ... for which the hazardous waste ... was listed." *Id.* § 261.-3(a)(2)(iii). With regard to mixtures of Bevill and listed wastes, the EPA concluded that it would stand by the position it had taken in its April 17, 1989, notice of proposed rulemaking; namely, that they would be governed by the Subtitle C mixture rules. 54 Fed.Reg. at 36,623.

These provisions, which deal, respectively, with Bevil/characteristic waste and Bevill/listed waste mixtures, together constitute the "Bevill mixture rule" that we vacated in *Solite,* 952 F.2d at 493–94, and that the EPA reissued in the interim final rule. The Bevill petitioners object to its reissuance on both procedural and substantive grounds.

In *Solite,* we vacated the Bevill mixture rule on the ground that it assumed the validity of the Subtitle C mixture rule, which we

had vacated in *Shell Oil.* In doing so, we stated that

> [i]f the EPA desires to and successfully does repromulgate the Subtitle C rule, it will similarly be able to repromulgate the Bevill rule, and attempt to justify the latter by reference to the former. Alternatively, the Agency may wish to justify the Bevill rule on independent grounds.

*Solite,* 952 F.2d at 493–94. In its interim final rule, the agency justified its reinstatement of the Bevill mixture rule as follows:

> The [*Solite*] court's opinion did not explicitly address the status of EPA's rule change regarding the application of the hazardous waste characteristics to mixtures of Bevill-exempt wastes. The court in *Shell Oil* vacated the "mixture rule" of 40 CFR § 261.3(a)(2)(iv), which addresses mixtures of listed wastes and other solid wastes. Thus, to the extent that the *Solite* court addressed mixtures involving listed and Bevill wastes, today's actions will reinstate the affected rules. *However, since the* Shell Oil *court did not address mixtures of characteristic and Bevill wastes, that part of the decision by the* Solite *court appears to be in error.*

57 Fed.Reg. at 7,631 (emphasis added).

The Bevill petitioners contest what they describe as the "summary repromulgation" of the Bevill mixture rule on two procedural grounds: First, they assert that the rule was issued without the prior notice and opportunity for comment and without the reasoned explanation required by the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(b) & (c); and second, they maintain that the EPA did not demonstrate that it had good cause to dispense with prior notice and comment, as required by 5 U.S.C. § 553(b)(3)(B). We consider this argument as it applies to each provision of the Bevill mixture rule.

#### 1. *The Bevill/Characteristic Waste Provision*

▪ The Bevill petitioners acknowledge that the EPA had provided notice and secured comment before the initial issuance of the Bevill/characteristic waste provision in 1989. They assert, nevertheless, that intervening events required a fresh opportunity for comment. The EPA responds, in its brief, that it was not required to reopen notice and comment proceedings because the comments received in response to its April 17, 1989, notice of proposed rulemaking remain fresh and relevant enough to satisfy the requirements of the APA. The agency maintains, further, that because it had fully explained its reasons for promulgating this provision at the time of its original issuance, there was no need for it to reiterate them in the interim final rule.

We agree with petitioners that the EPA's repromulgation of the Bevill/characteristic waste provision was procedurally flawed. In *Action on Smoking and Health v. CAB,* 699 F.2d 1209 (D.C.Cir.1983), we vacated a Civil Aeronautics Board regulation that rescinded three earlier rules because the agency had failed to provide an adequate statement of its action's "basis and purpose," as required by the APA. *Id.* at 1217–19. When the CAB repromulgated the regulation without satisfying APA rulemaking requirements, we again vacated the rule. *Action on Smoking and Health v. CAB,* 713 F.2d 795 (D.C.Cir.1983) (*"ASH"*). In doing so, we reminded the agency that "[t]o 'vacate,' ... means to 'annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; ... to set aside,'" *id.* at 797, and that if it wished to rescind the three earlier rules, it would have to do so through a new rulemaking. *Id.* at 798. In *Solite,* we vacated the original Bevill mixture rule. Accordingly, to repromulgate the rule, the EPA must comply with applicable provisions of the APA.

This does not necessarily require the EPA to "start from scratch" and initiate new notice and comment proceedings. *Id.* at 800. The APA's good cause exception may be invoked on a finding "that notice and public procedure thereon are ... unnecessary." 5 U.S.C. § 553(b)(3)(B) (1988). If the original record is still fresh, a new round of notice and comment might be unnecessary. Such a finding, however, must be made by the agency and supported in the record; it is not self-evident. "Although the Administrative Procedure Act does not establish a 'useful life' for a notice and comment record, clearly the life of such a record is not infinite." *ASH,*

713 F.2d at 800. New information relevant to the agency's decisionmaking might well have come to light after the original notice and comment proceedings and before the repromulgation of the rule. Because the EPA neither initiated a new rulemaking nor invoked the APA's good cause exception in the record, we again vacate the Bevill/characteristic waste provision of the Bevill mixture rule and do not reach petitioners' substantive objections to the provision.

### 2. Bevill/Listed Wastes Provision

 The EPA maintains that the Bevill/listed wastes provision, which applies the Subtitle C mixture rule to mixtures of Bevill and listed wastes, is nothing more than an interpretation of that rule and is therefore exempt from the APA's requirements. We agree that in construing the mixture rule to encompass such wastes, the EPA did not "create law"; rather, it made a "statement[ ] as to what [it] thinks the ... regulation means." *Gibson Wine Co., Inc. v. Snyder*, 194 F.2d 329, 331 (D.C.Cir.1952); *Cabais v. Egger*, 690 F.2d 234, 238 (D.C.Cir.1982) (same). Such interpretations are not subject to the APA's notice and hearing requirements. 5 U.S.C. § 553(b)(3)(A). Because the interpretation preceded the adoption of the Chafee Amendment, it was effectively enacted into law as part of the Subtitle C mixture rule. *See Public Citizen, Inc. v. FAA*, 988 F.2d 186, 194 (D.C.Cir.1993) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change."). Therefore, the Bevill petitioners' challenge to this provision of the Bevill mixture rule is moot for the same reason as is their challenge to the Subtitle C mixture and derived-from rules.

### III. CONCLUSION

We hold that petitioners' challenges to the Subtitle C mixture and derived-from rules, including the EPA's interpretation of the former to apply to mixtures of Bevill and listed wastes, are moot because the Chafee Amendment has enacted those rules as so interpreted into law. We vacate the provision of the Bevill mixture rule concerning Bevill/characteristic waste mixtures because the provision was reissued without compliance with the rulemaking requirements of the APA.

*So ordered.*