939 F.2d 710
 33 ERC 1672, 60 USLW 2108
 STATE OF NEVADA, Petitioner,
and
Environmental Defense Fund; State of Colorado; State of
Nebraska, Petitioners-Intervenors,
v.
James D. WATKINS, Secretary of the United States Department
of Energy,* Respondent,
and
Arizona Nuclear Power Project; Baltimore Gas & Electric
Company; Boston Edison Company; Carolina Power & Light
Company; The Cleveland Electric Illuminating Company;
Commonwealth Edison Company; Consolidated Edison Company of
New York, Inc.; Duke Power Company; Energy Services, Inc.;
Florida Power & Light Company; Georgia Power Company;
Gulf States Utilities Company; Houston Lighting & Power
Company; Kansas City Power & Light Company; Kansas
Electric Power Cooperative, Inc.; Kansas Gas & Electric
Company; New York Power Authority; Niagara Mohawk Power
Corp.; Northeast Utilities; Omaha Public Power District;
Pacific Gas & Electric Company; Pennsylvania Power & Light
Company; Philadelphia Electric Company; Public Service
Company of Colorado; Rochester Gas & Electric Corp.;
Southern California Edison Company; Texas Utilities
Company; Toledo Edison Company; Union Electric Company;
Virginia Electric & Power Company; Wisconsin Electric Power
Company; Wisconsin Public Service Corp., Respondents-Intervenors.
 No. 85-7308.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 14, 1991.
Decided July 17, 1991.
 
 On Petition for Review of a Decision of the United States Department of Energy.
 James H. Davenport, Special Deputy Atty. Gen., Riddell, Williams, Bullitt & Walkinshaw, Seattle, Wash., for petitioner.
 Melinda Kassen, Environmental Defense Fund, Boulder, Colo., for petitioners-intervenors.
 John A. Bryson, United States Department of Justice, Washington, D.C., for the respondent.
 Michael A. Bauser, Newman & Holtzinger, Washington, D.C., for respondents-intervenors.
 Before GOODWIN, FLETCHER and THOMPSON, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 The State of Nevada and intervenors Environmental Defense Fund, State of Colorado and State of Nebraska petition for review of the "General Guidelines for the Recommendation of Sites for Nuclear Waste Repositories" ("guidelines"), 10 C.F.R. pt. 960, promulgated by the Secretary of the Department of Energy ("Secretary") pursuant to Sec. 112(a) of the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. Sec. 10132(a) (1988).[1] Petitioners assert that the guidelines violate the language and purpose of the NWPA.
 
 
 2
 The Electric Utility Company Intervenors in Support of Respondent ("Utilities") assert as a threshold matter that this court lacks jurisdiction to review the Secretary's adoption of the guidelines. Because the NWPA explicitly defines the promulgation of the guidelines as a "preliminary decisionmaking activity," 42 U.S.C. Sec. 10132(d), we conclude that we lack jurisdiction to review the guidelines at this juncture. Accordingly, we dismiss the petition for lack of subject matter jurisdiction.
 
 BACKGROUND[2]
 
 3
 As originally enacted, the NWPA set out a multi-stage process for locating, evaluating and selecting two sites for the construction of repositories to house the nation's high-level radioactive waste and spent nuclear fuel. It provided for the Secretary as a first step to identify the States with one or more potentially acceptable sites for the first repository within 90 days after January 7, 1983, and to notify those States within another 90 days. 42 U.S.C. Sec. 10136(a) (1982). Within that same 180-day time period the Secretary was required to "issue general guidelines for the recommendation of sites for repositories." 42 U.S.C. Sec. 10132(a).[3] Those guidelines are the subject of the present petition.
 
 
 4
 In addition to the guidelines to be promulgated by the Secretary, the NWPA also required the Environmental Protection Agency ("EPA") Administrator to "promulgate [by rule] generally applicable standards for protection of the general environment from offsite releases from radioactive material in repositories," 42 U.S.C. Sec. 10141(a), and the Nuclear Regulatory Commission ("NRC") to "promulgate [by rule] technical requirements and criteria that it will apply" in authorizing construction of the repository and licensing its use. Id. Sec. 10141(b)(1)(A). The NRC published its technical requirements and criteria in 1983. See 10 C.F.R. pt. 60. The EPA issued standards in 1985. See 40 C.F.R. pt. 191.[4]
 
 
 5
 Following issuance of the guidelines, the Secretary was to "nominate" at least five sites suitable for site characterization and recommend three of the nominated sites to the President for site characterization by January 1, 1985. Id. Sec. 10132(b)(1)(A), (B) (1982).[5] Each nomination of a site required the issuance of an "environmental assessment" ("EA"), id. Sec. 10132(b)(1)(D)(1982), which the NWPA expressly provided would be "a final agency action subject to judicial review" in accordance with the APA and the NWPA review provisions. Id. Sec. 10132(b)(1)(E)(1982).[6] Next the President would review and either approve or disapprove the candidate sites for characterization. Id. Sec. 10132(c)(1982).
 
 
 6
 In May, 1986, the Secretary nominated five sites for characterization and recommended to the President that three of them be characterized: Yucca Mountain, Nevada; Deaf Smith County, Texas; and Hanford, Washington. NRDC v. EPA, 824 F.2d at 1262. The President approved characterization of the three sites. Nevada v. Herrington, 827 F.2d 1394, 1397 (9th Cir.1987) (Herrington II ) (citing 51 Fed.Reg. 19,788).
 
 
 7
 Prior to the commencement of the characterization process, however, in December, 1987, Congress amended the NWPA. Omnibus Budget Reconciliation Act of 1987, Pub.L.No. 100-203, Sec. 5011, 101 Stat. 1330-1, 1330-228. The amendments effectively eliminated all of the pre-characterization stages by requiring the Secretary to proceed with site characterization at Yucca Mountain and to cease investigation of all other potential sites for the first repository. The amendments also repealed the Secretary's authority to investigate potential sites for a second repository. Id. Sec. 5012, 101 Stat. at 1330-231. As to the latter stages of the process, set out below, the NWPA remained largely intact.[7]
 
 
 8
 Following characterization and specified public hearings, the Secretary is to decide whether to recommend Yucca Mountain for development as a repository. 42 U.S.C. Sec. 10134(a)(1). The Secretary's recommendation to the President that the site be approved for the development of a repository must be accompanied by a final environmental impact statement ("EIS") pursuant to the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. Secs. 4321-4347. 42 U.S.C. Sec. 10134(f).[8] If the Secretary recommends Yucca Mountain for approval and the President considers the site qualified, the President will submit a recommendation of the site to Congress. Id. Sec. 10134(a)(2). Following such recommendation Nevada may submit a notice of disapproval to Congress, which prevents the use of the site for a repository unless Congress passes a joint resolution approving the President's recommendation within the next 90 days of continuous session. Id. Secs. 10135(c), 10136(b).
 
 
 9
 Nevada and the petitioner-intervenors seek to challenge the guidelines as being inconsistent with the NWPA. The Utilities assert that judicial review of the guidelines is precluded by the specific language of sections 112 and 119 of the NWPA, 42 U.S.C. Secs. 10132, 10139, and by the legislative scheme as a whole. Nevada and the Secretary assert that we have jurisdiction pursuant to 42 U.S.C. Sec. 10139(a)(1)(A) because issuance of the guidelines constitutes a final decision of the Secretary within the meaning of that section.[9] The availability of judicial review is a question of law reviewable de novo. Pescosolido v. Block, 765 F.2d 827, 831 (9th Cir.1985).[10]DISCUSSION
 
 
 10
 The Supreme Court has repeatedly held that "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) (citations omitted). As the Court observed in Abbott, "[t]he Administrative Procedure Act provides specifically not only for review of '[a]gency action made reviewable by statute' but also for review of 'final agency action for which there is no other adequate remedy in a court.' " Id. (quoting 5 U.S.C. Sec. 704). " 'To preclude judicial review under [the APA] a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it. The mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold review.' " Id. at 141 n. 2, 87 S.Ct. at 1511 n. 2. (quoting H.R.Rep. No. 1980, 79th Cong., 2d Sess., 41, U.S.Code Cong.Serv. 1946, p. 1195 (1946)). More recently, in Block v. Community Nutrition Institute, 467 U.S. 340, 345, 104 S.Ct. 2450, 2453-54, 81 L.Ed.2d 270 (1984), the Court indicated that "[w]hether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." (citations omitted)
 
 
 11
 In this instance, although the structure and objectives of the statutory scheme as a whole are consistent with a finding that the guidelines are not separately reviewable, we need look no further than the plain language of the relevant sections of the NWPA to find a clear indication of Congressional intent to deny review. Section 119 of the NWPA, 42 U.S.C. Sec. 10139, entitled "Judicial review of agency action," vests original and exclusive jurisdiction in the United States courts of appeals over any civil action--
 
 
 12
 (A) for review of any final decision or action of the Secretary, the President, or the Commission under this part;
 
 
 13
 (B) alleging the failure of the Secretary, the President, or the Commission to make any decision, or take any action, required under this part;
 
 
 14
 (C) challenging the constitutionality of any decision made, or action taken, under any provision of this part;
 
 
 15
 (D) for review of any environmental impact statement prepared pursuant to the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.)....;
 
 
 16
 (E) for review of any environmental assessment prepared under section 10132(b)(1) or 10155(c)(2) of this title; or
 
 
 17
 (F) for review of any research and development activity....
 
 
 18
 42 U.S.C. Sec. 10139(a)(1). Both Nevada and the Secretary ground their assertion of reviewability in Sec. 10139(a)(1)(A), arguing that issuance of the guidelines constitutes a final decision of the Secretary.[11]
 
 
 19
 The Secretary's issuance of the guidelines might well be regarded as a "final decision or action" within the meaning of the NWPA and APA were we free simply to make our own assessment of finality under the relevant case law. Indeed, another panel of this court has reviewed the Secretary's "revised Internal General Guidelines on Nuclear Waste Repository Program Grants" (a less formalized set of internal guidelines not specifically required by the NWPA) pursuant to Sec. 10139(a)(1)(A), noting "the trend in favor of reviewing even policy statements and informal positions, letters, or announcements," and finding that those guidelines bore the requisite "hallmarks of finality" to make them ripe for review. State of Nevada ex rel. Loux v. Herrington, 777 F.2d 529, 535 (9th Cir.1985) (Herrington I). See also General Electric Uranium Management Corp. v. United States Dept. of Energy, 764 F.2d 896, 901 (D.C.Cir.1985) (holding the Secretary's rule setting the one-time fee to be charged under section 302(a)(3) of the NWPA to be "well within the class of agency actions reviewable under section 119(a)(1)(A)").
 
 
 20
 Congress, however, has explicitly answered the question of whether promulgation of the guidelines at issue here constitutes a "final decision or action." Section 112(d) of the NWPA, entitled "Preliminary activities," states:
 
 
 21
 Except as otherwise provided in this section, each activity of the President or the Secretary under this section shall be considered to be a preliminary decisionmaking activity. No such activity shall require the preparation of an environmental impact statement under [NEPA] ... or ... require any environmental review....
 
 
 22
 42 U.S.C. Sec. 10132(d).[12] Since promulgation of the guidelines pursuant to Sec. 10132(a) falls "under this section" and is clearly an "activity ... of the Secretary," it seems plain that the issuance of the guidelines constitutes "preliminary decisionmaking activity" under Sec. 10132(d). It likewise seems plain in light of Sec. 10139(a)(1)(A), which provides for judicial review only of "final decisions and actions," that part of Congress's purpose in denominating certain activities "preliminary decisionmaking" was to render them judicially unreviewable separate from the final decision to recommend.[13]
 
 
 23
 Nevada and the Secretary contend that Sec. 10132(d)'s denomination of certain actions as "preliminary decisionmaking" derives from NEPA, and that its sole function is to indicate that no EIS or environmental review is required pursuant to that Act. However, read in that manner, the two sentences of the section are entirely redundant, rendering one sentence or the other mere surplusage. It is a fundamental rule of statutory construction that "[w]e should avoid an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress." Beisler v. Commissioner, 814 F.2d 1304, 1307 (9th Cir.1987). We therefore decline to interpret the first sentence of Sec. 10132(d) in the manner suggested by Nevada and the Secretary.
 
 
 24
 Our reading of the first sentence of Sec. 10132(d) as intending to preclude judicial review of certain activities by defining them as "preliminary," is bolstered by Sec. 10132(b)(1)(E). That section specifically excepts EAs from the application of Sec. 10132(d) by providing that "[t]he issuance of any environmental assessment ... shall be considered to be a final agency action subject to judicial review in accordance with the provisions of chapter 7 of title 5 and section 10139 of this title."[14] This language clearly links the issue of final versus preliminary activity to the availability of judicial review. Moreover, the first sentence of Sec. 10132(b)(1)(E) would also be rendered largely superfluous by reading Sec. 10132(d) in the manner suggested by Nevada and the Secretary.
 
 
 25
 Because the express language of the NWPA precludes direct judicial review of the guidelines, we need not rely on inferences from the history, structure and objectives of the NWPA. It bears noting, however, that reading Secs. 10132(d) and 10133(d) to preclude direct review of interim steps of the site selection process is consistent with the Congressional purpose and the legislative scheme as a whole. The fact that the NWPA provides that the NRC and the EPA Administrator "shall, by rule, promulgate" their respective criteria and standards, 42 U.S.C. Sec. 10141, while it provides less formally that the Secretary "shall issue general guidelines" following consultation with specified agencies and officials, 42 U.S.C. Sec. 10132(a), is consistent with a conclusion that Congress did not intend the guidelines to be separately reviewable.
 
 
 26
 Moreover, Congress's purpose in passing the NWPA was to respond to "the urgent national demand for an answer to the waste disposal question." H.R.Rep. No. 491, 97th Cong., 2d Sess., Pt. 1, at 29 (1982), reprinted in 1982 U.S.Code Cong. & Admin. News 3792, 3795. "Although there [was] not unanimous agreement on all aspects of the nuclear waste management program, there [was] a solid consensus on major elements of the Federal program, and on the need for legislation to solidify a program and keep it on track." Id. (emphasis added). "Expedited judicial review of court challenges to the program as it is implemented" and "[a] legislated schedule for Federal decisions and actions for repository development" were seen as essential elements of the proposed program. Id. at 3796-97; see also 42 U.S.C. Sec. 10131(b)(1) (listing establishment of a schedule as a purpose of the part); Tennessee v. Herrington, 806 F.2d 642, 648 (6th Cir.1986) (recognizing in "the overall structure of the [NWPA] ... a consistent concern for timely implementation of the disposal provisions").
 
 
 27
 As originally enacted, the NWPA included a schedule for various stages of siting which is simply incompatible with judicial review of the process specified in each stage of Secs. 10132 and 10133: guidelines were to be promulgated within 180 days after January 7, 1983; potential sites were to be identified within 90 days and "nominated" and recommended for site characterization by January 1, 1985; the President was to have 60 days to approve or disapprove sites recommended for characterization; finally, the President was required to submit to Congress the final recommendation of one of the three characterized sites not later than March 31, 1987. 42 U.S.C. Secs. 10132(a), 10136(a), 10132(b)(1)(A), (B), 10132(c)(1), 10134(a)(2)(A) (1982). It would be difficult--if not impossible--to reconcile Congressional passage of such a stringent timeline with a finding that Congress intended for direct review to be available for each preliminary step of the process.
 
 
 28
 We read the plain language of sections 112(d) and 119(a)(1)(A), 42 U.S.C. Secs. 10132(d), 10139(a)(1)(A), as precluding judicial review of the guidelines separate from the final recommendation of the Secretary (if any) that a repository be built at Yucca Mountain. Accordingly, we DISMISS the petition for lack of subject matter jurisdiction.
 
 
 
 *
 James D. Watkins, Secretary of the United States Department of Energy, has been substituted for former Secretary John Herrington pursuant to Fed.R.App.P. 43(c)(1)
 
 
 [1]
 Unless specifically noted, all United States Code references to the NWPA are to the 1988 version. As to many sections, the 1982 and 1988 versions are identical
 
 
 [2]
 We briefly summarize the site selection process provided by the NWPA, and the effect of the 1987 amendments on that process, in order to facilitate our discussion of the guidelines' reviewability. For a more detailed description of the history of the NWPA, see Nevada v. Watkins, 914 F.2d 1545, 1549-52 (9th Cir.1990) (Watkins I), cert. denied, --- U.S. ----, 111 S.Ct. 1105, 113 L.Ed.2d 215 (1991); for an exhaustive recital of the steps in the siting process, see "Background Information" section of the guidelines at 49 Fed.Reg. 47,714-18 (codified at 10 C.F.R. pt. 960)
 
 
 [3]
 The guidelines were not issued in final form until December 6, 1984. The lack of timeliness, however, is irrelevant to the present petition
 
 
 [4]
 Portions of the EPA standards were vacated and remanded for reconsideration by the First Circuit in Natural Resources Defense Council v. United States Environmental Protection Agency, 824 F.2d 1258 (1st Cir.1987) (hereinafter "NRDC v. EPA "). Both the NRC's criteria and the EPA's standards are subject to judicial review pursuant to 42 U.S.C. Sec. 2239(b) (1982), which authorizes judicial review of final orders under the Atomic Energy Act. See id. at 1267, n. 7
 
 
 [5]
 Site characterization includes:
 (A) siting research activities with respect to a test and evaluation facility at a candidate site; and
 (B) activities, whether in the laboratory or in the field, undertaken to establish the geologic condition and the ranges of the parameters of a candidate site relevant to the location of a repository, including borings, surface excavations, excavations of exploratory shafts, limited subsurface lateral excavations and borings, and in situ testing needed to evaluate the suitability of a candidate site for the location of a repository, but not including preliminary borings and geophysical testing needed to assess whether site characterization should be undertaken.
 42 U.S.C. Sec. 10101(21).
 
 
 [6]
 The adequacy of the environmental assessment for Yucca Mountain, Nevada, and the continuing vitality of the environmental assessment in light of the 1987 amendments to the NWPA, are the subject of a related case, Nevada v. Watkins, No. 86-7309, which is also before this panel
 
 
 [7]
 The 1987 amendments also created the Office of the Nuclear Waste Negotiator, who is authorized to attempt to locate a state or Indian tribe willing to host a repository. 42 U.S.C. Sec. 10242. Those provisions are not germane to the present petition
 
 
 [8]
 It is clear that the final EIS is subject to judicial review, and it appears that the Secretary's recommendation that a site be approved for development of a repository would likewise be reviewable pursuant to the NWPA and the APA as a final decision or action of the Secretary. 42 U.S.C. Sec. 10139; 5 U.S.C. Sec. 704
 
 
 [9]
 At oral argument the Secretary took the position that any guidelines which have been issued in final form are reviewable pursuant to Sec. 10139(a)(1)(A), but that the transportation guideline was not yet sufficiently final to constitute a final decision
 
 
 [10]
 Nevada suggests that the issue of jurisdiction has already been resolved by a motions panel of this court. However, even Nevada's own characterization of what was before the motions panel (motions to dismiss based on ripeness and mootness) and what the panel decided (it ordered a briefing schedule), demonstrates that this court has not squarely addressed the question of the reviewability of the guidelines. Moreover, even had a motions panel decided as a preliminary matter that we have jurisdiction to review the guidelines, that would not preclude this panel from again considering the question of their reviewability. While we give deference to motions panel decisions made in the course of the same appeal, we have an independent duty to decide whether we have jurisdiction in the light of the record before us at the time of decision. See Schlegel v. Bebout, 841 F.2d 937, 941 (9th Cir.1988); United States v. Houser, 804 F.2d 565, 568-69 (9th Cir.1986)
 
 
 [11]
 The Secretary also refers to Sec. 10139(a)(1)(B) (providing for jurisdiction over actions alleging failure of the Secretary to make decisions or take actions required by the NWPA) as a possible basis for jurisdiction. An action under subsection (B) would be appropriate had the Secretary failed to issue the guidelines. Since, however, the Secretary did promulgate the guidelines, subsection (B) does not provide a basis for review. The fact that petitioners allege deficiencies in the guidelines does not signify that the Secretary failed to act within the meaning of subsection (B). The District of Columbia Circuit rejected such an argument in Public Citizen v. Nuclear Regulatory Comm'n, 845 F.2d 1105, 1107-08 (D.C.Cir.1988) (rejecting petitioner's argument for purposes of avoiding a time limit that the NRC's issuance of a non-binding policy statement amounted to an "ongoing failure to promulgate binding regulations," and observing that under such an approach "[a]lmost any objection to an agency action can be dressed up as an agency's failure to act") (emphasis in original). The guidelines therefore are reviewable only if they constitute a "final decision or action of the Secretary" within the meaning of Sec. 10139(a)(1)(A) or a "final agency action for which there is no other adequate remedy in a court" within the meaning of 5 U.S.C. Sec. 704
 
 
 [12]
 The section was renumbered from 10132(e) to 10132(d) by the 1987 amendments but its text was not altered
 
 
 [13]
 Section 704 of the APA provides that "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. Sec. 704. Likewise, while the NWPA does not expressly provide for review of preliminary decisionmaking (such as issuance of the guidelines) as part of any review of the Secretary's final recommendation, review of the adequacy of the guidelines will be inevitable at that juncture, since the guidelines provide the framework for and control the Secretary's decision to recommend
 
 
 [14]
 That the purpose of Sec. 10132(b)(1)(E) is to except EAs from the reach of Sec. 10132(d), and that Sec. 10132(d) otherwise would preclude judicial review of EAs, is supported by the phrasing of Sec. 10133(d), the parallel "preliminary activities" provision for the site characterization section. In contrast to Sec. 10132(d), which begins, "Except as otherwise provided in this section," Sec. 10133(d) begins, "Each activity of the Secretary under this section ..." Since there is no exception parallel to Sec. 10132(b)(1)(E) in Sec. 10133, there is no need for the qualifying language at the beginning of Sec. 10133(d)