UNITED STATES of America, Plaintiff–Appellee,

v.

Ricardo SOLORZANO–RIVERA, aka Fernando Solorzano–Rivera, Defendant–Appellant.

No. 03–10284.

United States Court of Appeals, Ninth Circuit.

Submitted March 8, 2004.*

Filed May 21, 2004.

* This panel unanimously agrees that this case is appropriate for submission without oral argument pursuant to Fed. R.App. P. 34(a)(2).

Atmore L. Baggot, Apache Junction, AZ, for the defendant-appellant.

John R. Lopez, IV, Assistant United States Attorney, Phoenix, AZ, for the plaintiff-appellee.

Before: HALL and GRABER, Circuit Judges, and WEINER,** Senior District Judge.

CYNTHIA HOLCOMB HALL, Circuit Judge.

Ricardo Solorzano–Rivera appeals his conviction of illegal reentry into the United States under 8 U.S.C. § 1326. He con-

** Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District

tends that the government violated his rights under the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161 and 3162, and that the district court erred in instructing the jury that the defendant had the burden of proving duress by a preponderance of the evidence.

We exercise jurisdiction under 28 U.S.C. § 1291 and affirm the district court. Solorzano's arguments concerning the Speedy Trial Act fail. First, not more than 30 days elapsed between his arrest and indictment. The speedy trial clock was tolled under 18 U.S.C. § 3161(h)(1)(I) because the court was considering the plea agreement from October 16, 2002, to January 21, 2003. Second, not more than 70 days elapsed between Solorzano's indictment and trial. Under 18 U.S.C. § 3161(i), Solorzano was deemed indicted on January 24, 2003—the date on which the order allowing him to withdraw his guilty plea became final—and his trial commenced on February 25, 2003. In addition, the district court's jury instructions regarding duress were proper. Solorzano bore the burden of establishing duress because his duress claim was an affirmative defense put forth to excuse the offense, not to negate an element of the offense.

## I. FACTS

Solorzano was arrested near San Luis, Arizona, on September 13, 2002. On October 8, 2002, the government filed an information charging him with illegal reentry. Solorzano waived indictment and pleaded guilty that same day. On October 16, 2002, the magistrate judge granted the government a 30–day extension to indict the defendant and scheduled sentencing for January 21, 2003.

of Pennsylvania, sitting by designation.

On January 8, 2003, Solorzano moved to withdraw his guilty plea. The district court granted the motion on January 21, 2003, setting a trial date of February 19, 2003. A grand jury indicted Solorzano on February 5, 2003.

On February 8, 2003, Solorzano moved to dismiss the indictment under the Speedy Trial Act. The district court denied the motion on February 18. Trial commenced on February 25.

At trial Solorzano testified that, immediately before he entered the United States, Mexican police harassed him, took his watch as a bribe, and hit him with the butt of a handgun. He testified that he was afraid for his life and, chased by the police, he jumped over the 15–foot–high border fence, hurting his foot in the process. This testimony was central to his duress defense.

The border patrol agent who apprehended him testified that Solorzano had no visible marks or injuries when he was discovered. Solorzano did not complain of any injuries and did not say that he was fleeing from a threat, the agent testified. A second agent who booked Solorzano testified that Solorzano spontaneously said he was paroled into the United States on federal charges, but that he offered no proof of this.

The first agent took the stand again after the defense rested. He testified that after Solorzano was booked, Solorzano said that he was paroled into the United States and that he had left his parole documents, which he alleged allowed him to be in the country, in a slot by the air conditioning unit in the back of the agent's truck. But the agent testified that he did not see any documents in the slot when he shined his flashlight there.

The jury found Solorzano guilty of illegal reentry on February 26, 2003. The district court sentenced him to 77 months' imprisonment on May 27, 2003, enhancing the sentence under 8 U.S.C. § 1326(b)(2) because Solorzano had been previously removed after being convicted of an aggravated felony. This appeal followed.

## II. STANDARDS OF REVIEW

 "We review the district court's disposition of a Speedy Trial Act issue for clear error as to factual findings and de novo as to application of legal standards." *United States v. Brickey*, 289 F.3d 1144, 1150 (9th Cir.2002) (internal quotation marks omitted). We review de novo whether the district court's instructions to the jury correctly stated the law. *United States v. Stapleton*, 293 F.3d 1111, 1114 (9th Cir.2002).

## III. ANALYSIS

### A. Speedy Trial Act

i. *Time between arrest and indictment; exclusion of time under 18 U.S.C. § 3161(h)(1)(I)*

 Solorzano's first Speedy Trial Act argument concerns the allegedly untimely filing of the indictment. The Speedy Trial Act requires that a federal indictment be filed within 30 days after arrest, or else the charge must be dismissed. 18 U.S.C. §§ 3161(b), 3162(a)(1). Under 18 U.S.C. § 3161(h), however, certain periods of delay shall be excluded when computing the 30 days, including "delay resulting from consideration by the court of a proposed plea agreement." 18 U.S.C. § 3161(h)(1)(I).

Solorzano was arrested on September 14, 2002. He claims that the government was required to indict him by "approximately November 14, 2002," or within 60 days after his arrest. (Upon the parties' joint motion, a magistrate judge ordered the time period for indictment extended from 30 to 60 days.)

We are not persuaded that the 60–day period had expired when Solorzano was indicted on February 5, 2003.

We hold that the period of time from October 8, 2002, when Solorzano entered his guilty plea, until January 21, 2003, when the district court accepted Solorzano's withdrawal of that plea, was properly excluded from the statutory period to indict under 18 U.S.C. § 3161(h)(1)(I). The Speedy Trial Act provides in part:

> The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed . . .:
>
> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
>
> . . . .
>
> (I) delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government[.]

18 U.S.C. § 3161(h).

In this case, the proposed plea agreement was before the district court for "consideration" as of October 8, 2002, when Solorzano entered it. Solorzano moved to withdraw the plea[1] on January 8, 2003, and the court granted his motion on January 21, 2003.[2] At that time, the period of exclusion ended—the plea agreement was no longer under consideration by the court. With this time excluded, the speedy trial clock ran only from September 14, 2002, to October 8, 2002–25 days— and from January 21, 2003, to February 5, 2003–16 days. The 41–day total is less

than the 60–day period authorized by the magistrate judge's 30–day extension of the period for indictment.

Solorzano argues that the October 8–to– January 21 period should not be excluded for two reasons. First, he argues that the Speedy Trial Act does not provide for the exclusion of time periods related to plea negotiations, citing *McNeely v. Blanas*, 336 F.3d 822, 828 n. 7 (9th Cir.2003). Even if correct, this argument would not avail Solorzano. As of October 8, 2002, the parties were no longer negotiating the plea agreement, but had submitted it to the court.

Second, Solorzano argues that § 3161(h)(1)'s reference to "other proceedings" limits the exclusions of time available under that subsection to proceedings involving a different charge. To support this proposition he cites *United States v. Arellano–Rivera*, 244 F.3d 1119 (9th Cir. 2001), and *United States v. Lopez–Osuna*, 242 F.3d 1191 (9th Cir.2000). Solorzano correctly notes that these cases involved excludable delay caused by proceedings under a charge different from the charge on which the defendants were ultimately indicted. *Arellano–Rivera*, 244 F.3d at 1121; *Lopez–Osuna*, 242 F.3d at 1194–95. But we did not hold that this fact was a necessary prerequisite to excluding a period of delay under § 3161(h)(1). Instead, we affirmed the exclusions of time in *Arellano–Rivera* and *Lopez–Osuna* under § 3161(h)(1)(D), a subsection that expressly excludes "delay resulting from trial with respect to other charges" from the time period for indictment. *Arellano–Rivera*,

---

1. Federal Rule of Criminal Procedure 11(d) provides that a defendant may withdraw his guilty plea before the court accepts it "for any reason or no reason."

2. We consider the date on which the court *accepted* the plea withdrawal—not the date on which Solorzano filed his motion to withdraw

the plea—to be the final date of the court's "consideration" of the plea agreement for purposes of § 3161(h)(1)(I). However, we note that the government would have indicted Solorzano within the permissible period for indictment even if the 13 days between January 8 and January 21 had been counted as part of the running of the speedy trial clock.

244 F.3d at 1124; *Lopez–Osuna,* 242 F.3d at 1197–98. Section 3161(h)(1)'s phrase "other proceedings concerning the defendant" did not control our holdings.

■■■■ As we indicated in *Lopez–Osuna,* the circumstances described in §§ 3161(h)(1)(A)-(J) are *themselves* examples of "other proceedings," rather than types of events occurring *within* other proceedings relating to a different charge. *See Lopez–Osuna,* 242 F.3d at 1197. The latter interpretation is foreclosed by § 3161(h)(1)(D), which refers specifically to "other charges against the defendant." This subsection would be superfluous if Congress had intended "other proceedings concerning the defendant" in § 3161(h)(1) to mean only proceedings involving a *different* charge from that contained in the eventual indictment. " '[W]e should avoid an interpretation of a statute that renders any part of it superfluous....' " *Cheema v. INS,* 350 F.3d 1035, 1041 (9th Cir.2003) (*quoting Nevada v. Watkins,* 939 F.2d 710, 715 (9th Cir.1991)). In fact, other than in subsection (D), § 3161(h)(1) says nothing about other charges. The plain meaning of § 3161(h)(1)(I) is that the speedy trial clock shall be tolled while the court considers a plea agreement on a charge contained in the eventual indictment. *See United States v. Perez–Reveles,* 715 F.2d 1348, 1352 n. 4 (9th Cir.1983) (suggesting this interpretation, in dictum).

Under § 3161(h)(1)(I), the speedy trial clock was tolled from October 8, 2002, to January 21, 2003, so there was no violation of §§ 3161(b) and 3162(a)(1) of the Speedy Trial Act.

*ii. Time between indictment and trial; effect of § 18 U.S.C. § 3161(i)*

■■■■ Solorzano's next argument relies on 18 U.S.C. § 3161(c)(1), which mandates that the criminal trial of a federal defendant begin within 70 days after the filing date of the indictment or information.

This argument fails, however, in light of 18 U.S.C. § 3161(i):

> If trial did not commence within the time limitation specified in section 3161 because the defendant had entered a plea of guilty or nolo contendere subsequently withdrawn to any or all charges in an indictment or information, the defendant shall be deemed indicted with respect to all charges therein contained within the meaning of section 3161, on the day the order permitting withdrawal of the plea becomes final.

18 U.S.C. § 3161(i). Section 3161(i) functions to discourage a federal defendant from pleading guilty, withdrawing the plea, and then claiming that the government violated the Speedy Trial Act. In the absence of § 3161(i), a defendant would be able to " 'game the system' by reacting favorably to a government's plea offer, waive indictment on lesser charges, and then after reneging on his part of the bargain, complain that the government failed to obtain an indictment within the appropriate time frame." *Arellano–Rivera,* 244 F.3d at 1125.

The legislative history of § 3161(i) "makes clear that where a defendant pleads guilty and then withdraws his plea ... the time limits commence again on the day the plea is withdrawn." *United States v. Carter,* 804 F.2d 508, 512 (9th Cir.1986) (internal quotation marks omitted).

In *United States v. Wickham,* 30 F.3d 1252, 1254 (9th Cir.1994), we noted that the effect of § 3161(i) on the application of § 3161(c)(1) "is simply to substitute an artificial indictment date for the actual indictment date when calculating the seventy-day period for a defendant who pleads not guilty." "Section 3161(i) does not replace section 3161(c)(1) when a defendant withdraws a guilty plea; it merely reestablishes the indictment date for the purposes of section 3161." *Id.* This interpretation is

consistent with "the purpose of section 3161(i), which is to enlarge the time in which the government can bring to trial a defendant who has withdrawn a guilty plea rather than to limit the time allowed by section 3161(c)(1)." *Id.* at 1255.

Solorzano's plea and subsequent plea withdrawal prevented his trial from beginning within the Speedy Trial Act's time limits. Consequently, under § 3161(i), Solorzano was deemed indicted on January 21, 2003, the date on which the order permitting his plea withdrawal became final. And Solorzano's trial began within 70 days, on February 25, 2003. Therefore the government did not violate § 3161(c)(1) in prosecuting Solorzano.

### B. Duress Instruction

Solorzano also asserts that the district court erred in instructing the jury on his defense of duress. The court instructed the jury with Ninth Circuit Model Criminal Jury Instruction 6.6, not Model Instruction 6.5, requiring Solorzano to prove duress by a preponderance of the evidence, instead of requiring the government to prove lack of duress beyond a reasonable doubt.

The comment to Model Instruction 6.5 ("Duress, Coercion or Compulsion (To Refute Element of Offense)"), which places the burden of proof on the government, states that the instruction "is to be used only when the offense charged has a mens rea element and duress is raised to rebut this element." (citing *United States v. Dominguez–Mestas*, 929 F.2d 1379, 1381 (9th Cir.1991) (*per curiam*), *cert. denied*, 502 U.S. 958, 112 S.Ct. 419, 116 L.Ed.2d 440 (1991)). The comment to Model Instruction 6.6 ("Duress, Coercion or Compulsion (Legal Excuse)"), which places the burden of proof on the defendant, states that the instruction is to be used "when the defendant alleges that by virtue of duress, coercion, or compulsion, the defen-

dant knowingly or intentionally committed the criminal act." (*citing United States v. Meraz–Solomon*, 3 F.3d 298, 299 (9th Cir. 1993) (*per curiam* )).

Our case law supports this distinction. "If a defense negates an element of the crime, rather than mitigates culpability once guilt is proven, it is unconstitutional to put the burden of proof on the defendant." *Walker v. Endell*, 850 F.2d 470, 472 (9th Cir.1987). "This is because '[d]ue process requires that the prosecution prove every element of a crime beyond a reasonable doubt.' " *United States v. Hernandez–Franco*, 189 F.3d 1151, 1157–58 (9th Cir.1999) (quoting *Walker*, 850 F.2d at 472). For an offense which requires *mens rea* to be established, "once a defendant has presented facts which, if believed, would justify the inference of duress, the trier must consider that inference in determining whether the prosecution has proved *mens rea*." *Dominguez–Mestas*, 929 F.2d at 1384 n. 3. However,

[w]here a statute identifies knowledge as the only mental element necessary for commission of the crime, it is not a violation of due process to require a defendant to bear the burden of proving duress by a preponderance of the evidence. The prosecution is not thereby unconstitutionally relieved of proving its case because duress is an affirmative defense which excuses the defendant's conduct without negating his criminal knowledge.

*Meraz–Solomon*, 3 F.3d at 299 (internal citations omitted); *see Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) ("Proof of the nonexistence of all affirmative defenses has never been constitutionally required. . . .").

Generally, the affirmative defense of duress does not negate the mental states of knowledge or intent, or the voluntary nature of a criminal act. A person

who acts under duress to harm another generally "knows that his actions will lead to injury or that his purpose is to cause injury." *Walker*, 850 F.2d at 473. But he nevertheless acts "in order to comply with the demands of another." *Id.* A person, for example, "could intend to drive a truck with undocumented aliens to further their illegal presence in the United States, but act in that manner because someone had a gun to his head." *Hernandez–Franco*, 189 F.3d at 1158. Thus, "even though he has done the act the crime requires and has the mental state which the crime requires, his conduct which violates the literal language of the criminal law is excused because he 'lacked a fair opportunity to avoid acting unlawfully.' " WAYNE R. LA-FAVE, SUBSTANTIVE CRIMINAL LAW § 9.7(a) (2d ed.2003) (footnotes omitted) (quoting Joshua Dressler, *Exegesis of the Law of Duress: Justifying the Excuse and Searching for Its Proper Limits*, 62 SO. CAL. L.REV. 1331, 1365 (1989)).[3]

■ The offense charged in this case, illegal reentry into the United States, is a general intent offense. The statute that defines the offense, 8 U.S.C. § 1326,[4] makes no reference to a mental state. Accordingly, the government need not prove that the alien specifically intended to violate § 1326, but may establish culpability simply by showing that the alien voluntarily reentered the United States without permission. *United States v. Ayala*, 35 F.3d 423, 426 (9th Cir.1994).

Solorzano contends that the district court erred because duress would negate voluntariness in his case. We disagree. As we have stated in dicta, an alien may be found to have involuntarily entered the country if, for example,

> he is extradited here against his will; he is paroled in by the proper authorities; he is sleeping on a train which against his expectation enters this country; he is on a plane flying over United States territory which has engine trouble and makes an emergency landing at an airport here.

*United States v. Quintana–Torres*, 235 F.3d 1197, 1200 (9th Cir.2000). This type of scenario did not occur here; Solorzano testified that he jumped over the border fence voluntarily. He said he was "around 200 meters" away from the border when the Mexican police began to harass him and he ran toward the border fence. "We were close to the border, and cars were crossing," Solorzano testified."And then I don't know how I did it, the fence was very high, but I managed to jump it." Moreover, because Solorzano was apprehended across the border fence in United States

---

**3.** "A defendant must establish three elements to present a duress defense: '(1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) lack of a reasonable opportunity to escape the threatened harm.' " *United States v. Shryock*, 342 F.3d 948, 987 (9th Cir.2003) (*quoting United States v. Moreno*, 102 F.3d 994, 997 (9th Cir.1996)).

**4.** Subject to subsection (b) of this section, any alien who—
 (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326(a).

territory, the jury could reasonably infer that he had arrived there voluntarily. *See id.* ("[A] reasonable juror may well infer that the alien had the intention to be here when the alien is discovered at any location in the country other than the border.... To dispel the inference, the alien would have to demonstrate that one of the speculative possibilities of involuntary entry had actually taken place.")

■ In sum, even if Solorzano established that he illegally reentered the United States under duress, the fact remains that he did so voluntarily. The defense was offered to excuse the criminal offense, not to negate an element of it, and the district court properly required the defendant to establish duress by a preponderance of the evidence.

**AFFIRMED.**