**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

ROBERTO LEAL-CRUZ,
          *Defendant-Appellant.*

No. 04-50519

D.C. No.
CR-03-02234-IEG

OPINION

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, Chief District Judge, Presiding

Argued and Submitted
September 15, 2005—Pasadena, California

Filed December 9, 2005

Before: J. Clifford Wallace, Barry G. Silverman,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

## COUNSEL

Roseline D. Feral, San Diego, California, for the defendant-appellant.

Assistant United States Attorney David P. Curnow, San Diego, California, filed the brief, and Assistant United States Attorney Kevin Mulcahy, San Diego, California, argued the cause for the plaintiff-appellee.

## OPINION

CALLAHAN, Circuit Judge:

Roberto Leal-Cruz appeals his conviction for attempted illegal reentry into the United States after deportation, under

8 U.S.C. § 1326. Leal-Cruz contends that the district court erred by instructing the jury that he had the burden of proving his duress defense. We have jurisdiction to review appellant's conviction pursuant to 28 U.S.C. § 1291 and we affirm.

## I

Roberto Leal-Cruz, a citizen of Mexico, attempted to reenter the United States on July 12, 2003. Around 1:00 a.m., he was observed by United States border patrol agents in Calexico, California, climbing over the 15 to 20 foot international boundary fence separating the United States from Mexico. A border patrol agent chased Leal-Cruz for two blocks in the United States before he surrendered.

Leal-Cruz testified that about two weeks earlier, Mexican police officers beat him up and left him for dead. The same police officers spotted him on the date of his attempted reentry, when he was pumping gas on the Mexican side of the border. When he saw the police officers, Leal-Cruz ran approximately three blocks to the international boundary fence. After jumping the fence and seeing United States border patrol officers, he retreated back up the fence and sat on top of it, not wanting to be captured inside of the United States. The Mexican police appeared at that time and, because he feared for his life, Leal-Cruz jumped to the American side of the fence and ran, hoping to avoid being apprehended by the United States agents. After a brief foot chase, he surrendered.

The district court concluded that although the evidence presented at trial warranted a duress instruction, the act of crossing the international boundary fence into the United States did not negate the specific intent element of attempted illegal reentry and therefore could only be offered to excuse Leal-Cruz's criminal conduct. The district court instructed the jury with Ninth Circuit Model Criminal Jury Instruction 6.6,

which placed the burden on Leal-Cruz to prove duress by a preponderance of the evidence.[1]

## II

[1] As a preliminary matter, we must decide whether Leal-Cruz waived his right to challenge the jury instruction under the invited error doctrine. *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc), holds that an error is waived and unreviewable when a defendant both invites the error and affirmatively relinquishes or abandons a known right. A challenge to a jury instruction is waived under the invited error doctrine when, in spite of being aware of the applicable law, the defendant accepts a flawed instruction. *Id. Perez* requires that counsel's conduct rise to the level of an affirmative relinquishment of the right to challenge the instruction on appeal. *Id.* We hold here that the instruction is reviewable because Leal-Cruz did not affirmatively abandon or relinquish his challenge to the instruction.

[2] At the final jury instruction conference, defense counsel asked that the instruction be supplemented to explain that if the defendant established duress by a preponderance of the

---

[1]The given instruction read:

> The defendant must prove duress by a preponderance of the evidence. A preponderance of the evidence means that you must be persuaded that the things the defendant seeks to prove are more probably true than not true. A defendant acts under duress only if at the time of the crime charged:
>
> 1. there was an immediate threat of death or serious bodily injury to the defendant if the defendant did not commit the crime;
>
> 2. the defendant had a well-grounded fear that the threat of death or serious bodily injury would be carried out; and
>
> 3. the defendant had no reasonable opportunity to escape the threatened harm.
>
> If you find that each of these things has been proved by a preponderance of the evidence, your verdict should be for the defendant.

evidence, then the burden shifted to the government to disprove duress beyond a reasonable doubt. Counsel specifically requested that language from Model Instruction 6.5 (requiring the prosecution to prove absence of duress) be included in the given instruction. Although defense counsel did not formally object when the judge disagreed with her request to supplement Model Instruction 6.6 with language from Model Instruction 6.5, counsel nevertheless disagreed with what the court concluded was the applicable law. Despite counsel's failure to articulate clearly her position at the final jury instruction conference, we conclude that her failure to object formally to the given instruction does not rise to the level of an affirmative relinquishment or abandonment of Leal-Cruz's right to challenge the instruction on appeal. Therefore, Leal-Cruz did not waive his challenge to the jury instruction under the invited error doctrine.

## III

Whether Leal-Cruz has the burden of proving his duress defense is a question of law, and is therefore reviewed de novo. *United States v. Martinez-Martinez*, 369 F.3d 1076, 1083 (9th Cir. 2004); *United States v. Meraz-Solomon*, 3 F.3d 298, 299 (9th Cir. 1993) (per curiam).

[3] In *In re Winship*, the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. 358, 364 (1970). Since that case, the Court has struggled with the proper extent to which legislatures may define the elements of crimes and shift the burden of proof to the defendant. The cases that follow establish two core principles: Legislatures retain broad leeway in defining elements of crimes and the requisite *mens rea*. However, once a government has established the applicable elements it must prove each of them beyond a reasonable doubt and may not lessen its responsibility by shifting the burden of persuasion to the

defendant on any issue which negates an element the government is required to prove.

In the first major post-*Winship* burden shifting case, the Court held that Maine had impermissibly lessened its burden of proof by shifting the burden to the defendant to prove "heat of passion" in order to reduce murder to manslaughter. *Mullaney v. Wilbur*, 421 U.S. 684, 697-01 (1975). Maine had retained the common law definition of murder whereby "malice aforethought is an essential and indispensable element of the crime of murder." *Id.* at 686. There, the Maine Supreme Judicial Court had held that "malice aforethought and heat of passion on sudden provocation are two inconsistent things." *Id.* at 686-87. Thus, the Court stated that "by proving the latter the defendant would negate the former and reduce the homicide from murder to manslaughter." *Id.* at 687. The Court held that by requiring the defendant to negate an element on which the state had the burden of proof, Maine had impermissibly lessened its burden under *Winship* and therefore reversed Mullaney's conviction. *Id.* at 700-01.

Shortly after *Mullaney*, the Court reached the opposite result in *Patterson v. New York*, 432 U.S. 197 (1977). New York had created a defense of "extreme emotional disturbance" which would reduce murder to manslaughter and shifted the burden of proof to the defendant on that defense. *Id.* at 198-99. Unlike Maine, however, New York also had adopted a differing definition of murder which had two elements: (1) intent to cause the death of another person and (2) causing the death of such person or of a third person. *Id.* at 198 (quotations, punctuation, and citation omitted). The Court distinguished *Mullaney* because while in that case "malice, i.e., lack of provocation, was presumed and could be rebutted by the defendant only by proving by a preponderance of evidence that he acted with heat of passion upon sudden provocation," under New York law "nothing was presumed or implied against Patterson." *Id.* at 216. The key distinction thus appears to be that proof of "extreme emotional disturbance"

did not disprove or negate the required intent—the "intent to cause the death of another person." New York was therefore free to create a mitigation defense and place the burden on the defendant to prove the defense by a preponderance of the evidence. The Court concluded that "[t]he Due Process Clause . . . does not put New York to the choice of abandoning those defenses [which place the burden on the defendant] or undertaking to disprove their existence in order to convict of a crime which otherwise is within its constitutional powers to sanction by substantial punishment." *Id.* at 207-08.

The Court later upheld shifting the burden of persuasion on self-defense in *Martin v. Ohio*, 480 U.S. 228 (1987). In that case, the Court again appeared to endorse the same "negate the required elements test" when it stated "[w]e are thus not moved by assertions that the elements of aggravated murder and self defense overlap in the sense that evidence to prove the latter will often tend to negate the former." *Id.* at 234.

These principles have been reaffirmed by the Supreme Court. Most recently, in *Apprendi v. New Jersey*, the Court suggested a similar "negation" test with its discussion of *Mullaney* and *Patterson* when it stated that "New York, unlike Maine, had not made malice aforethought, or any described *mens rea*, part of its statutory definition of second-degree murder . . . ." 530 U.S. 466, 485 n.12 (2000).

**[4]** From these cases we conclude that the Due Process Clause forbids shifting the burden of proof to the defendant on an issue only where establishing the defense would necessarily negate an element that the prosecution must prove beyond a reasonable doubt under *Winship*. We are also mindful that legislatures must be given flexibility in defining the operative elements of a crime and the requisite *mens rea* for each element. With this framework in mind, we turn to the applicable Ninth Circuit precedents that are relevant to this appeal.

**[5]** Our own precedents have held that when a defense negates the element of a crime, it is unconstitutional to place the burden of proving the defense on the defendant. *United States v. Hernandez-Franco*, 189 F.3d 1151, 1157 (9th Cir. 1999) (citing *Walker v. Endell*, 850 F.2d 470, 472 (9th Cir. 1987)). The defense of duress, however, does not necessarily negate the intent required to commit a specific intent offense. *Id.* at 1158 (citing *United States v. Fei Lin*, 139 F.3d 1303, 1307 (9th Cir. 1998)). Attempted illegal reentry is a specific intent crime. *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1196 (9th Cir. 2000) (en banc) (defining the *mens rea* element of attempted illegal reentry as "[having] the purpose, i.e., conscious desire, to reenter the United States without the express consent of the Attorney General"). Accordingly, we must decide whether the duress asserted by Leal-Cruz negated the specific intent element of attempted illegal reentry, the position advanced by Leal-Cruz, or whether it could only be offered to excuse his criminal conduct. Guided by circuit precedent, we hold that Leal-Cruz's duress defense could only be offered to excuse the offense.

In *Fei Lin*, we determined that duress does not negate the *mens rea* element of hostage taking or making ransom demands. In so doing, we relied on *Walker v. Endell*, 850 F.2d 470 (9th Cir. 1987), which explained that duress does not negate the specific intent element of kidnapping because "a defendant can restrain another with the intent to inflict injury, in the sense that he knows that his actions will lead to injury or that his purpose is to cause injury, but act in this manner in order to comply with the demands of another." *Id.* at 473. Applying this line of reasoning, we held that duress no more negated the element of intent in *Fei Lin* than the specific intent element of kidnapping in *Walker*. *Fei Lin*, 139 F.3d 1308.

Later, in *Hernandez-Franco*, we held that a duress defense did not negate the specific intent elements of attempt to transport illegal aliens into the United States. 189 F.3d at 1158.

Hernandez-Franco's defense was that he was forced at gunpoint to drive the truck in which aliens were found. Adopting the *Fei Lin* reasoning, the court concluded that "[a]ppellant could intend to drive a truck with undocumented aliens to further their illegal presence in the United States, but act in that manner because someone had a gun to his head." *Id.*

Leal-Cruz attempts to distinguish *Hernandez-Franco*, arguing that the intent element is greater for attempted illegal reentry than for attempted transportation of illegal aliens, and so, although duress may not negate the *mens rea* required for attempted transportation of illegal aliens, it does negate the *mens rea* element of attempted illegal reentry. We are not persuaded. As recognized in *Hernandez-Franco*, the attempt to transport illegal aliens is a specific intent crime because (1) it is an attempt crime, and (2) the statute requires a showing of specific intent to further the alien's illegal presence in the United States. 189 F.3d at 1158. Even though we have defined the specific intent element of attempted illegal reentry as having the "purpose" or "conscious desire" to reenter the United States unlawfully, we do not view this language as establishing a *mens rea* different from the specific intent required for attempted transportation of illegal aliens.

Most recently, in *United States v. Solorzano-Rivera*, 368 F.3d 1073, 1080-81 (9th Cir. 2004), we decided that duress did not negate the voluntariness of illegal reentry into the United States—a general intent offense. Like Leal-Cruz, Solorzano-Rivera presented a duress defense based on the need to flee from abusive Mexican police officers. *Id.* at 1076. Solorzano-Rivera argued that the burden was on the government to prove absence of duress because his duress negated the voluntariness of his act. *Id.* at 1080. This court disagreed, concluding that his entry into the United States was voluntary and his defense therefore could not be offered to negate an element of the offense, but rather only to excuse the criminal conduct. *Id.* at 1081.

The *Solorzano-Rivera* court provided examples of involuntary entries into the United States: An individual extradited to the United States against his will, or paroled into the country by proper authorities; or one who is sleeping on a train that unexpectedly enters the country, or traveling on a plane that makes an emergency landing in the country. *Id.* at 1080 (citing *United States v. Quintana-Torres*, 235 F.3d 1197, 1200 (9th Cir. 2000)). The court distinguished Solorzano-Rivera's conduct from the volitional conduct described in these examples, and concluded that jumping the international boundary fence to escape Mexican police officers was a voluntary act. *Id.* at 1080-81.

**[6]** For the same reason that Solorzano-Rivera's conduct was voluntary, and the conduct of Hernandez-Franco, Fei Lin and Walker was intentional, Leal-Cruz's conduct was purposeful. Leal-Cruz intended to enter the United States without the express consent of the Attorney General. He had the "conscious desire" to enter the country, even if the act of crossing the border was done to escape harm. Therefore, Leal-Cruz had the burden of proving his duress defense, instead of the government being required to prove absence of duress.

Our holding makes particular sense when we consider that the difference between a reentry into the United States and an attempted reentry into the United States—when an alien is apprehended in this country after jumping the international boundary fence—is whether the alien is free from official restraint. *See United States v. Pacheco-Medina*, 212 F.3d 1162 (9th Cir. 2000) (reversing a conviction for illegal reentry into the United States because after jumping the international boundary fence, the defendant was under constant and close surveillance by United States agents). It would not make sense to shift the burden of proving duress to the government merely because Leal-Cruz was never free from official restraint.

**IV**

**[7]** We conclude that Leal-Cruz's reason for jumping the international boundary fence did not negate the specific intent element of attempted illegal reentry but rather could only be offered as a legal excuse for committing the offense. Accordingly, the district court properly instructed the jury and Leal-Cruz's conviction is **AFFIRMED**.